HEDRICK, APPELLEE, *v.* MOTORISTS MUTUAL INSURANCE COMPANY, APPELLANT, ET AL.

[Cite as Hedrick *v.* Motorists Mut. Ins. Co. (1986), 22 Ohio St. 3d 42.]

(No. 84-1950—Decided February 5, 1986.)

*Dale S. Economus,* for appellee.

*Buckingham, Doolittle & Burroughs Co., L.P.A.,* and *Orville L. Reed III,* for appellant.

DOUGLAS, J. Appellant asserts that the issue raised is whether the insurance policy provision in question constitutes a valid anti-stacking provision. After careful review of the policy provision in question, this court cannot concur in appellant's assessment of the issue presented by these facts. Rather, this court finds that the issue presented in the case is whether the policy provision is an exclusionary provision which operates to bar recovery herein. For the reasons that follow, this court holds that the relevant provision is an exclusionary provision and, moreover, by its unambiguous terms, precludes recovery under the facts of this case.

The pertinent policy provision provides as follows:

"EXCLUSIONS

"A. We do not provide Uninsured Motorists Coverage for bodily injury sustained by any person:

"1. While *occupying,* or when struck by, any motor vehicle owned by you or any *family member* which is not insured for this coverage under this policy. * * *" (Emphasis *sic.*)

This provision is clear and unambiguous. It specifically precludes coverage to a person who sustains bodily injury while occupying a motor vehicle which is owned by a family member and which is not insured for coverage under the policy.

In the instant case, appellee, on August 2, 1982, was involved in an automobile accident with an uninsured motorist and thereby sustained bodily injury. At the time of the accident, appellee was driving a 1981 Yamaha motorcycle owned by his father. The motorcycle was not expressly insured under the policy issued by appellant; the policy issued by appellant covered only a 1975 Ford pickup truck and a 1982 Ford station wagon. Plainly, the policy provision precluded any coverage for bodily injury sustained by any person while *occupying* a motor vehicle *owned* by an insured but not insured under the policy. Since the motorcycle was owned by an insured and was not a covered vehicle under the policy, appellant properly denied coverage for any injuries sustained by the appellee in this accident.

Moreover, this court finds that this policy provision is a valid, enforceable exclusion. While the trial court in the instant case pursued an analysis similar to that which the court has employed herein, it nonetheless found that this exclusionary provision was not enforceable. The trial court reasoned that the provision was void as against public policy because the procedural requirements of drafting exclusions, as set forth in *Ady* v. *West American Ins. Co.* (1982), 69 Ohio St. 2d 593 [23 O.O.3d 495], were not met. More specifically, the trial court refused to give effect to the exclusionary provision because appellants had no documentation regarding appellee's acceptance or rejection of the exclusion, *i.e.*, whether it was voluntarily given. See *id.* at 599.

This court, however, does not find this language in *Ady* to be controlling. *Ady* was a plurality opinion. Only the syllabus received the requisite four votes. Thus, the only law emanating from *Ady* is contained in the syllabus, which provides as follows: "Any contractual restriction on the coverage mandated by R.C. 3937.18 must comply with the purpose of this statute." The general language contained in the opinion or in the concurrence, however interpreted, is simply not the law of Ohio.

Nor should such language be the law of Ohio. As Justice Holmes noted in his dissent in *Ady* at 604:

"In construing the mandates of the General Assembly insofar as the offering of uninsured motorist coverage in Ohio is concerned, we must not unduly restrict the free right of contract, and must allow for a certain amount of latitude for the exercise of discretion on the part of the policyholder as to the desirable extent or breadth of coverage for which he is willing, or able, to pay the premiums."

In addition, to require insurers or insurance sellers to explain in detail every sentence of an insurance contract as a prerequisite to its efficacy would be unduly burdensome. As the trial court so aptly noted, "* * * [t]here would doubtlessly be more confusion and disputes over the possibly individualized, disparate explanations given than if the drafters of these documents were required to write them in such a way that only the slightest interpretation would be necessary after the fact, as in a court of law."

More importantly, the exclusion this court recognizes today is in accord with the purpose of R.C. 3937.18. In 1980, R.C. 3937.18 was amended to read as follows:

"(E) Any automobile liability or motor vehicle liability policy of insurance that includes uninsured motorist coverage may include terms and conditions that preclude stacking of uninsured motor vehicle coverages."

The legislature chose not to include a definition of "stacking" in the statute. In addressing this situation, this court, in *Karabin* v. *State Automobile Mut. Ins. Co.* (1984), 10 Ohio St. 3d 163, first presumed that the legislature adopted the definition of "stacking" previously determined by the court in its decisions to be "the lumping or adding together of

payments, or the aggregation of coverage." *Id.* at 166. A common thread running through those cases determining whether an insured was entitled to stack uninsured motorist coverage was the fact that the insured was seeking payment under more than one policy of insurance. *Curran v. State Auto. Mut. Ins. Co.* (1971), 25 Ohio St. 2d 33 [54 O.O.2d 166]; *Grange Mut. Cas. Co. v. Volkmann* (1978), 54 Ohio St. 2d 58 [8 O.O.3d 70]; *Ady, supra; Karabin, supra.*

By the 1980 amendment to R.C. 3937.18, the legislature allowed insurance companies to include provisions in their policies to prohibit the stacking of insurance coverage. To construe the statute otherwise would defeat the objectives of the legislature in amending the statute.

In the case at bar, the policy of insurance was issued after the effective date of the amendment to R.C. 3937.18(E), now (G), and the policy did contain an anti-stacking provision.[1] The injury also occurred after the effective date of the statutory amendment. In addition, this court notes that appellee did recover under the policy issued by Midwest Mutual Insurance Company which specifically insured the motorcycle he was riding at the time of the accident.

Some may argue that uninsured motorist coverage is applicable to persons, not vehicles, and thus an exclusion to coverage as to any vehicle owned by an insured is without effect. To find the exclusion clause ineffective because uninsured motorist coverage is only personal coverage, and thereby exclude vehicle coverage, would permit recovery when the opposite was intended by the precise language in the policy. This interpretation is not only contrary to the manifest intent of the legislature as expressed in R.C. 3937.18(E), now (G), it also unduly restricts the parties' right to freely contract.

Our holding today does not violate the public policy considerations previously espoused by this court that uninsured motorist coverage "* * * is designed to protect persons injured in automobile accidents from losses which, because of the tort-feasor's lack of liability coverage, would otherwise go uncompensated." *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St. 2d 161, 165 [51 O.O.2d 229]. That policy, with the legislatively mandated changes as to anti-stacking and exclusionary language as herein found valid, remains the same today.

For the foregoing reasons, this court holds that an insurance policy provision which denies uninsured motorist coverage, when bodily injury is sustained by any person while *occupying a motor vehicle owned by an insured* but which vehicle is not specifically insured under the policy, is a valid exclusion.

---

[1] "TWO OR MORE AUTO POLICIES

"If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy."

Accordingly, the judgment of the court of appeals is reversed and final judgment is entered for appellant.

*Judgment reversed.*

LOCHER, HOLMES and WRIGHT, JJ., concur.

CELEBREZZE, C.J., SWEENEY and C. BROWN, JJ., dissent.

HOLMES, J., concurring. With this well-written opinion, the majority of this court has now returned to a stance of construing contracts of insurance more reasonably, with the intent and purpose in mind of not only the General Assembly when it enacted R.C. 3937.18(E) [now (G)], but also that of the contracting parties. I commend this result as being in keeping with my dissent in *Ady* v. *West American Ins. Co.* (1982), 69 Ohio St. 2d 593, 604 [23 O.O.3d 495].

CELEBREZZE, C.J., dissenting. I agree with the majority's conclusion that the relevant contract term is an exclusionary provision and not an anti-stacking clause. However, I respectfully dissent from the holding that it was effective to preclude recovery under the facts of this case and the laws of Ohio.

The resolution of this appeal rests on an application of the clear mandate of Ohio's General Assembly set forth in R.C. 3937.18(A). As the majority recognizes, this statute establishes a public policy consideration recognized by the legislature and this court that uninsured motorist coverage "* * * is *designed to protect persons* injured in automobile accidents from losses which, because of the tort-feasor's lack of liability coverage, would otherwise go uncompensated." (Emphasis added.) *Abate* v. *Pioneer Mut. Cas. Co.* (1970), 22 Ohio St. 2d 161, 165 [51 O.O.2d 229].

To this end, the statute asserts control over the terms of contracts of insurance in that it unequivocally provides that "[n]o automobile liability * * * policy of insurance * * * shall be * * * issued * * * unless * * * coverage * * * is provided therein * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury * * * [*provided that*] [t]*he named insured shall have the right to reject such uninsured motorist coverage* * * *." (Emphasis added.) R.C. 3937.18(A), effective June 25, 1980. The legislature recognized the unequal bargaining power between insurance companies and the public. It sought to remedy this disparity by providing the insured with the option of purchasing uninsured motorist protection.

In order to comply with this mandated offering of insurance, Motorists Mutual Insurance Company ("Motorists") included uninsured motorist coverage in "Part C" of its standard form insurance policy sold to Hedrick. The "insuring agreement" contained therein provides, *inter alia:*

"We will pay damages which a *covered person* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* because of bodily injury:

"1. Sustained by a *covered person;* and

"2. Caused by an accident." (Emphasis *sic.*)

The term *"covered person"* certainly includes Hedrick's son as the policy defines it to mean, "1. You or any *family member."* (Emphasis *sic.*)

Thus far the policy fully complies with state law as it offers uninsured motorist coverage to the named insured. The "insuring agreement" fulfils the legislative mandate as it offers protection to covered persons twenty-four hours a day, three hundred sixty-five days a year, regardless of whether the insured is injured while in the insured vehicle or elsewhere. Presumably, the parties should then be able to enter into dialogue as to whether the named insured wishes to reject such coverage, either in whole or in part. Such an express rejection is exactly the freedom-of-contract option intended by the General Assembly.[2]

However, the instant policy did not stop at this point, but rather went on to contractually nullify both a portion of its own "insuring agreement" as well as the underlying state statute. In a later pre-printed section of the form contract, entitled "Exclusions," Motorists automatically deleted a small portion of the full coverage contained in its "insuring agreement" with the following proviso:

"A. We do not provide Uninsured Motorists Coverage for bodily injury sustained by any person:

"1. While *occupying* * * * any motor vehicle owned by you or any *family member* which is not insured for this coverage under this policy. * * *" (Emphasis *sic.*)

There are understandable reasons why Motorists would want to limit recovery of insured persons for bodily injuries in this fashion. However, the legislature gave the "named insured" the right to reject or reduce coverage and did not intend to provide the insurer with the right to unilaterally exclude or limit the *offer* which is mandated by law. When the bargaining positions of the parties are unequal, such an exclusion could only be enforced if the inferior party is given an option of negating the exclusion for additional consideration. Cf. *Motorists Mut. Ins. Co.* v. *Jones* (1966), 9 Ohio Misc. 113, 115 [38 O.O.2d 154].

It was this adhesion clause which was in clear contravention of state law and was thereby unenforceable because it, in effect, limits the statutorily required offer without a knowing rejection by the insured. As Judge Turner of this court observed in *Bell* v. *Northern Ohio Tel. Co.* (1948), 149 Ohio St. 157, 158 [36 O.O. 501]: "It is elementary that no valid

---

[2] This opportunity to reject the offer not only provides the policy holder the right to purchase uninsured motorist coverage but also recognizes that the insured may not wish, or be able to afford the premiums for, full coverage. The policy holder may indeed desire to purchase more restrictive coverage, or a policy with lesser limits of recovery, if such is offered by the insurer.

contract may be made contrary to statute, and that valid, applicable statutory provisions are parts of every contract."

The issue concerning the effectiveness of this contract exclusion is unquestionably controlled by the longstanding rule "that where a statute, designed for the protection of the public, prohibits in express terms the making of a contract, such contract is absolutely void, whether the thing contracted for is *malum in se,* or [as in the instant case] merely *malum prohibitum." Rossman v. McFarland* (1859), 9 Ohio. St. 369, 379.

This is because insurers "* * * are without power to insert enforceable provisions in their contracts of insurance which would restrict coverage in a manner contrary to the intent of the statute." *Bartlett* v. *Nationwide Mut. Ins. Co.* (1973), 33 Ohio St. 2d 50, 53 [62 O.O.2d 406].

I can appreciate the logic that "to require insurers * * * to explain in detail every sentence of an insurance contract as a prerequisite to its efficacy would be unduly burdensome." However, at a minimum, insurers must explain the policy's provisions for uninsured motorist coverage, truly offer the coverage required by law, identify what the insured's coverage options are, and inform the policy holder to what extent (and under what circumstances if the contract is not *all* inclusive) the policy selected provides recovery for bodily injury resulting from an uninsured motorist.[3]

I am dismayed, as are Justices Sweeney and Brown, that the majority, having first concluded the provision is not an anti-stacking clause, nevertheless attempts to bolster its holding by discussing statutory amendments and case law concerning "stacking" of insurance. It is regretful that the members of this august tribunal could not place aside their divergent view-

---

[3] An influential statement made by Professor Llewellyn addressed the problems of standard form contracts and is of guidance in this case:

"Instead of thinking about 'assent' to boiler-plate clauses, we can recognize that so far as concerns the specific, there is no assent at all. What has in fact been assented to, specifically, are the few dickered terms, and the broad type of the transaction, and but one thing more. That one thing more is a blanket assent (not a specific assent) to any not unreasonable or indecent terms the seller may have on his form, which do not alter or eviscerate the reasonable meaning of the dickered terms. The fine print which has not been read has no business to cut under the reasonable meaning of those dickered terms which constitute the dominant and only real expression of agreement * * *.

"* * *

"* * * [T]he boiler-plate is assented to en bloc, 'unsight, unseen,' on the implicit assumption and to the full extent that (1) it does not alter or impair the fair meaning of the dickered terms when read alone, and (2) that its terms are neither in the particular nor in the net manifestly unreasonable and unfair. Such is the reality, and I see nothing in the way of a court's operating on that basis, to truly effectuate the only intention which can in reason be worked out as common to the two parties, granted good faith. And if the boiler-plate party is not playing in good faith, there is law enough to bar that fact from benefiting it * * *. [A]ny contract with boiler-plate results in *two* several contracts; the *dickered* deal, and the collateral one of *supplementary* boiler-plate.

"Rooted in sense, history, and simplicity, it is an answer which could occur to anyone." (Emphasis *sic.*) Llewellyn, The Common Law Tradition, Deciding Appeals (1960) 370-371.

points concerning "anti-stacking" clauses in order to consider the merits of *this case*.[4]

Lastly, I join in the essence of Justices Sweeney's and Brown's dissenting opinions, *infra*, in that they further illuminate the fallacy of the majority's reasoning and the unnecessary emasculation of past precedent.

Based on all of the above, I dissent.

SWEENEY and C. BROWN, JJ., concur in the foregoing dissenting opinion.

SWEENEY, J., dissenting. I concur in the dissenting opinions of Chief Justice Celebrezze and Justice Clifford Brown, but I write separately to further emphasize the internal inconsistencies and flawed analysis of the majority opinion.

The majority first admits that the policy provision in question is *not* subject to analysis under the appellant's sole proposition of law — *i.e.*, whether said provision "constitutes a valid anti-stacking provision" — but the majority *then* proceeds to uphold the provision by referring to R.C. 3937.18(E), which authorized the use of "anti-stacking" provisions in motor vehicle liability policies that include uninsured motorist coverage. The majority reasons that "stacking" is simply the "aggregation of coverage"; notes that the appellee "did recover under * * * [a separate] policy issued by Midwest Mutual Insurance Company"; and effectively concludes that the provision in question, by precluding the aggregation of appellant's coverage with that of Midwest Mutual, is in accord with "the manifest intent of the legislature as expressed in R.C. 3937.18(E)."

Unfortunately, in relying upon R.C. 3937.18(E), as it read in 1980, the majority fails to properly recognize the *specific* intent of the legislature. At the time of the appellee William Hedrick Jr.'s accident, R.C. 3937.18(G)

---

[4] The policy herein *did* contain a valid "anti-stacking clause which, by its own terms, is not at issue in this case. See fn. 1, *supra*. As we noted in *Karabin v. State Automobile Mut. Ins. Co.* (1984), 10 Ohio St. 3d 163, 165: "* * * [I]t is apparent that divisions (A) and (E) [now (G)] complement rather than conflict with each other. Division (A) sets forth the general policy guaranteeing that an insured will be afforded the opportunity to purchase uninsured motorist coverage in an amount up to his liability limits. Division (E) provides a *specific modification*, permitting insurers to confine their liability to the limits of a single policy." (Emphasis added.)

The breadth of the "specific modification" made by the legislature is found in paragraph one of the syllabus in *Karabin*:

"The unambiguous language of former R.C. 3937.18(E) permits insurance carriers to include provisions in automobile insurance contracts which preclude stacking of uninsured motorist coverage."

The exclusion clause at issue in this case simply does not fall within the narrow "anti-stacking" exception carved out by the legislature. Other than terms which fall within the statutory exception, insurers cannot reduce or restrict uninsured motorist coverage absent a rejection of such coverage by the named insured. R.C. 3937.18(A).

had been enacted to conjoin and clarify the statutory authorization of anti-stacking provisions that previously had been set forth in R.C. 3937.18(E) and 3937.181(E). R.C. 3937.18(G) provides:

"Any automobile liability or motor vehicle liability *policy of insurance that includes coverages* offered under division (A) of this section may include terms and conditions that preclude *stacking of such coverages.*" (Emphasis added.)

By its own terms, R.C. 3937.18(G) permits insurers to use anti-stacking provisions *only to preclude the stacking of the uninsured/underinsured motorist coverages that are provided in a single policy of insurance* — *not* to preclude the stacking of an insurer's coverages with those coverages that may be provided in a totally separate policy of insurance.

R.C. 3937.18(E), now (G), was designed by the legislature to narrowly authorize the use of anti-stacking provisions — *i.e.,* to allow an insurer to preclude the stacking of coverages that it has provided in a *single policy of insurance.* By relying, however, on the language of former R.C. 3937.18(E) without considering the specific legislative intent behind that section of the Revised Code, the majority illogically validates the "other vehicle" exclusion that was struck down nearly four years ago by this court in *Ady* v. *West American Ins. Co.* (1982), 69 Ohio St. 2d 593 [23 O.O.3d 495].[5] As evidenced both by the appellant's vain attempt to bring the provision in question under the "anti-stacking umbrella" now afforded by R.C. 3938.18(G) and by the decisions of the trial court and unanimous appellate court below, the bench and the bar of this state have both accepted and applied the principle enunciated time and again by this court, that uninsured/underinsured motorist coverage was designed by the legislature to protect *persons. Abate* v. *Pioneer Mut. Cas. Co.* (1970), 22 Ohio St. 2d 161, 165 [51 O.O.2d 229]; *Curran* v. *State Auto. Mut. Ins. Co.* (1971), 25 Ohio St. 2d 33, 38 [54 O.O.2d 166]; *Bartlett* v. *Nationwide Mut. Ins. Co.* (1973), 33 Ohio St. 2d 50, 52 [62 O.O.2d 406]; *Grange Mut. Cas. Co.* v. *Volkmann* (1978), 54 Ohio St. 2d 58, 61 [8 O.O.3d 70]; *Kish* v. *Central Natl. Ins. Group* (1981), 67 Ohio St. 2d 41, 44 [21 O.O.3d 26]; *Ady* v. *West American Ins. Co., supra,* at 595; *Auto-Owners Mut. Ins. Co.* v. *Lewis* (1984), 10 Ohio St. 3d 156, 158; *Gomolka* v. *State Auto. Mut. Ins. Co.* (1984), 15 Ohio St. 3d 27, 28. Pursuant to this principle, such coverage may not be excluded simply on the basis of an *insured person's* presence in a non-insured vehicle.

---

[5] I find it incomprehensible that the majority can so flippantly disregard *Ady's* precedential value simply because it was decided by a plurality of the court. It is apparent from the briefs of parties herein and from the decisions of the courts below that the bench and bar of this state have accepted *Ady* as standing for the proposition that exclusions from uninsured motorist coverage must, *in the very least,* "be conspicuous and in terminology easily understood by a customer. A customer must be aware of the provision, understand the meaning and voluntarily agree to any restrictions on the full coverage statutorily mandated." *Ady* at 599.

Faced, first, with the legislative mandate that uninsured/underinsured motorist coverage be provided, absent express rejection of such coverage, to all *persons* covered by motor vehicle liability insurance, and, second, with the fact that the provision in question is not an anti-stacking provision under the lone statutory exception to the mandatory offering of uninsured/underinsured motorist coverage, the majority magically creates an "other vehicle exclusion" exception to such coverage. The majority thus provides an unexpected "gift" to the insurance industry and encourages future "limitations" on uninsured/underinsured motorist coverages through the use of various contractual "exclusions." The proliferation of such exclusions would effectively "gut" R.C. 3937.18 of its remedial purpose.

Today's decision disregards established, equitable principles governing the offering of uninsured/underinsured motorist coverage; it creates uncertainty in the law where previously there was none; and, it will deprive many of this state's citizens of insurance protection when they are wrongfully injured at the hands of uninsured motorists. It is basic hornbook law that a party cannot enter into contracts or contractual provisions that are contrary to law. In that the Revised Code mandates the provision of uninsured motorist coverage (absent express rejection thereof) in all motor vehicle liability policies of insurance; and, since uninsured motorist coverage is for the express, statutory purpose of protecting all insured persons from damages accruing as a result of bodily injury suffered at the hands of uninsured motorists, any contractual exclusion that precludes uninsured motorist coverage to an insured individual who has not expressly rejected that coverage is contrary to law and unenforceable. Unfortunately, to the detriment of the purchasers of motor vehicle liability insurance in this state, the majority has chosen to ignore this logic. I, therefore, must dissent.

CELEBREZZE, C.J., and C. BROWN, J., concur in the foregoing dissenting opinion.

CLIFFORD F. BROWN, J., dissenting. I must respectfully dissent from the majority's grant of *carte blanche* to insurance companies to carve gaping holes into statutorily mandated uninsured motorist coverage.

The majority sweeps under the rug over a decade of precedent with its statement that the body of law reviewed in *Ady* v. *West American Ins. Co.* (1982), 69 Ohio St. 2d 593 [23 O.O.3d 495] is not the law of Ohio. The fact that *Ady* was a plurality opinion does not, under any known rule of law, negate the sound precedent upon which *Ady* relied. In *Ady,* this court reviewed and approved extensive precedent, all of which had recognized the sound public policy underlying the legislature's mandate of uninsured motorist coverage. Such coverage "is designed to protect persons injured in automobile accidents from losses which, because of the tort-feasor's lack

of liability coverage, would otherwise go uncompensated." *Abate* v. *Pioneer Mut. Cas. Co.* (1970), 22 Ohio St. 2d 161, 165 [51 O.O.2d 229]. The same language was used, and the same conclusion reached, in *Curran* v. *State Auto. Mut. Ins. Co.* (1971), 25 Ohio St. 2d 33, 38 [54 O.O.2d 166], and in *Bartlett* v. *Nationwide Mut. Ins. Co.* (1973), 33 Ohio St. 2d 50, 52 [62 O.O.2d 406]. Indeed, in *Bartlett, id.,* and again in *Shearer* v. *Motorists Mut. Ins. Co.* (1978), 53 Ohio St. 2d 1, 7 [7 O.O.3d 1], we stated that "the legislative purpose in creating compulsory uninsured motorist coverage was to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance." The case at bar is on all-fours with *Ady, supra.* William Hedrick, Jr. was insured, was physically injured, and sustained financial loss as the result of the tortfeasor's lack of liability insurance coverage.

In *Ady, supra,* we reaffirmed that R.C. 3937.18 mandates the offering of uninsured motorist coverage. See, also, *Abate, supra; Motorists Mut. Ins. Co.* v. *Tomanski* (1971), 27 Ohio St. 2d 222 [56 O.O.2d 133]; and *Kish* v. *Central Natl. Ins. Group* (1981), 67 Ohio St. 2d 41 [21 O.O.3d 26]. We said that "[a]ny restriction on full coverage should emanate from the General Assembly; otherwise, a contractual limitation in the insurance policy should comply with the statutory purpose" (*Ady, supra,* at 596-597); and that "this statutorily mandated coverage can not be whittled away by private parties." *Id.* at 596. Today, the majority of this court does more than whittle: the majority takes an axe to the legislature's mandate and leaves behind only empty language.

Appellant asked this court to find that its policy exclusion is expressly approved by R.C. 3937.18(E), now (G), by which the legislature permits insurance companies to preclude "stacking" of uninsured motor vehicle coverages. But that statute is irrelevant to the exclusionary language at issue here. The purported application of the exclusion, by its terms, does not depend whatsoever on the "lumping or adding together of payments or the aggregation of coverage." *Karabin* v. *State Auto. Mut. Ins. Co.* (1984), 10 Ohio St. 3d 163, 166. The majority's reference to other insurance which happened to be present in this case to justify the exclusion as anti-stacking refers, not to the exclusionary language, and not to the statute; rather, this purported exclusion would have applied whether or not appellee had another policy of insurance. Thus, the exclusion itself, by any fair reading, is not anti-stacking.

Appellant urges that the following language, labeled an exclusion to uninsured motorist coverage, constitutes an effective anti-stacking provision: "We do not provide Uninsured Motorist Coverage for bodily injury sustained by any person: 1. While occupying, or when struck by, any motor vehicle owned by you or any family member which is not insured for this coverage under this policy." That language is strikingly similar to the language held ineffective under the law as expressed in the syllabus of

*Ady, supra,* despite the existence then of statutory language identical in effect to that upon which appellant relies.

This court had occasion to consider effective anti-stacking language in *Karabin, supra,* which read: "TWO OR MORE AUTO POLICIES[:] If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy." It cannot be mere coincidence that appellant's insurance policy here recites that very language, word for word, in a policy section labeled "PART F—GENERAL PROVISIONS." Thus, appellant clearly knows how to draft effective anti-stacking language, and did so elsewhere in the very policy considered today. But that language would not be effective to deny coverage on the facts of this case, since appellant did not issue all of the relevant insurance policies. Now, appellant asks this court to believe that it included not one, but two anti-stacking provisions — one clear and precise, and the other mysterious, making no reference at all to any other policy of insurance to which its terms purport to apply.

As the majority notes but then ignores, appellant asked this court only to find that its policy exclusion constitutes a valid anti-stacking provision. As its sole proposition of law, appellant proposes that "[p]olicy language which *effectively* prevents the stacking of uninsured motorists coverages is in accord with public policy and, therefore, valid, enforceable, and not violative of the principles enunciated in *Ady* v. *West American Ins. Co.*" (Emphasis added.) But the majority, to reach its result, places its seal of approval on a bare exclusion, the terms of which simply do not refer to other insurance and cannot be contorted to constitute an anti-stacking provision. Rather, the majority engages in a *sub silentio* overruling of *Ady,* which recognized that " '[a]ny contractual restriction or *exclusionary clause* on the uninsured motorist coverage mandated by R.C. 3937.18, *except as authorized* in division (E) [now (G)], * * * is invalid. * * *' " (Emphasis added.) *Ady, supra,* at 600 (Clifford F. Brown, J., concurring).[6] Thus, it follows as night follows day that since the exclusion here is not anti-stacking, it is invalid. Indeed, just last year this court unanimously recited the above-quoted language with approval in *Karabin, supra,* at 165. In its eagerness to sidestep the opinion in *Ady,* the majority makes no attempt to explain away that language in *Karabin.* Rather, the majority characterizes the exclusion as anti-stacking, not by its language, but simply due to the presence of other insurance in this case. The majority may as well have relied on Orwell and stated:

---

[6] For the sake of clarity, I note that my concurrence in *Ady* was intended to buttress the majority opinion, not to suggest in any way that I did not join in that majority opinion. That opinion, despite today's attempt to state otherwise, was consistent with long-established legislative intent. Today's abandonment of that legislative intent is, in my opinion, a travesty.

"WAR IS PEACE
"FREEDOM IS SLAVERY
"IGNORANCE IS STRENGTH
"EXCLUSIONS ARE ANTI-STACKING"
(Orwell [1949], Nineteen Eighty-Four, paraphrased.)

Based on the foregoing, I would hold that the attempted exclusion of uninsured motorist coverage under this policy is invalid as a matter of law.

Accordingly, I would affirm the judgment of the court of appeals.

CELEBREZZE, C.J., and SWEENEY, J., concur in the foregoing dissenting opinion.