SACCUCCI, APPELLEE, *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, APPELLANT.

[Cite as Saccucci *v.* State Farm Mut. Auto. Ins. Co. (1987), 32 Ohio St. 3d 273.]

(No. 86-887—Decided September 2, 1987.)

274

L.P.A., *Michael F. Jilek, Sr.* and *Robert M. Scott,* for appellee.

*Manahan, Pietrykowski & Bamman* and *Cormac B. Delaney,* for appellant.

*Per Curiam.* The issue in this case is whether the policy language relied upon by State Farm is a valid and enforceable limitation which prohibits Saccucci from stacking the uninsured motorist coverages under the three policies.

The relevant contract language is set forth in the uninsured motor vehicle and underinsured motor vehicle coverage section of the policies:

**"If There Is Other Uninsured Motor Vehicle Coverage**

"* * *

"3. If the *insured* is injured while *occupying* a vehicle not owned by *you, your spouse* or any *relative,* this coverage applies:

"a. as excess to any uninsured motor vehicle coverage which applies to the vehicle as primary coverage, but

"b. only in the amount by which it exceeds the primary coverage.

"If coverage under more than one policy applies as excess:

"a. the total limit of liability shall not exceed the difference between the limit of liability of the coverage that applies as primary and the highest limit of liability of any one of the coverages that apply as excess; and

"b. we are liable only for our share. Our share is that per cent of the damages that the limit of liability of this coverage bears to the total of all uninsured motor vehicle coverage applicable as excess to the accident." (Emphasis *sic.*)

The court of appeals below found that the first half (the first "a" and "b," plus preamble) of the disputed provision constituted an "excess-escape" clause which seeks to avoid or limit recovery. Under this clause State

*Williams, Jilek & Lafferty Co.,*

Farm would pay nothing to Saccucci. The court of appeals found such avoidance of indemnification was contrary to the holding in *Curran* v. *State Auto. Mut. Ins. Co.* (1971), 25 Ohio St. 2d 33, 54 O.O. 2d 166, 266 N.E. 2d 566, because a result of no indemnification was repugnant to the uninsured motorist statute. The court of appeals found that the remainder of the disputed provision, which prohibits inter-policy stacking and provides for pro rata apportionment of coverages, also resulted in avoidance of liability and denial of coverage, and intimated it to be contrary to public policy.

Finally, the court of appeals held that the "anti-stacking" language in State Farm's policies was unenforceable since it was "* * * lacking in that degree of clarity and conciseness exacted by the exemplar, if not a standard, set forth in *Karabin* v. *State Automobile Mut. Ins. Co., supra* [(1984), 10 Ohio St. 3d 163, 10 OBR 497, 462 N.E. 2d 403]. The clearness of purpose and intent must, in our judgment, be made manifest, with comprehension measured against the degree of intellect accorded the ordinary man. Nothing less will do."

The Court of Appeals for Cuyahoga County reviewed the identical policy provision in *Alba* v. *State Farm Mut. Auto. Ins. Co.* (Jan. 24, 1985), No. 48502, unreported, and found that:

"The language used by appellee to restrict stacking is clear, unambiguous and conspicuous. The restriction is located in the uninsured motorist section of the policy and is not hidden or obscured. Therefore, the provision precluding stacking is valid and enforceable." *Id* at 3.

On May 8, 1985, this court overruled a motion to certify the record in case No. 85-445, *Alba* v. *State Farm Mut. Auto. Ins. Co.*

State Farm contends that the language at issue is a valid and enforceable preclusion of stacking of uninsured motorist coverages. In support of this argument, State Farm relies on R.C. 3937.18(G) (formerly R.C. 3937.18[E]) and this court's decisions in *Karabin* v. *State Auto. Mut. Ins. Co.* (1984), 10 Ohio St. 3d 163, 10 OBR 497, 462 N.E. 2d 403; and *Hedrick* v. *Motorists Mut. Ins. Co.* (1986), 22 Ohio St. 3d 42, 22 OBR 63, 488 N.E. 2d 840. State Farm also argues that where policies provide uninsured motorist coverage, terms and conditions that limit the insurer's liability constitute valid anti-stacking language. In support, State Farm cites R.C. 3937.18 (G); *Karabin, supra; Hedrick, supra; Benson* v. *Rosler* (1985), 19 Ohio St. 3d 41, 19 OBR 35, 482 N.E. 2d 599; and *Murfield* v. *State Farm Ins. Co.* (1986), 22 Ohio St. 3d 54, 22 OBR 73, 488 N.E. 2d 849.

Prior to the enactment of R.C. 3937.18(E) (now R.C. 3937.18[G]), this court issued a number of decisions which allowed stacking of uninsured motorist coverages. Those cases invalidated, on public policy grounds, various types of exclusionary or limiting provisions which would otherwise operate to bar recovery under multiple policies or under multiple coverages in single policies.

In 1980, the General Assembly amended the uninsured motorist coverage statute by adding R.C. 3937.18(E), which allowed insurers to include anti-stacking terms and conditions in policies containing uninsured motorist coverage. In its original form R.C. 3937.18(E) provided:

"Any automobile liability or motor vehicle liability policy of insurance that includes uninsured motorist coverage may include terms and conditions that preclude stacking of uninsured motor vehicle coverages."

In 1982, R.C. 3937.18(E) was amended and recodified as R.C. 3937.18(G):

"Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section [uninsured and underinsured motorist coverage] may include terms and conditions that preclude stacking of such coverages."

In *Karabin, supra,* we upheld an anti-stacking provision in view of the new legislative policy expressed in R.C. 3937.18(E). We held that the unambiguous language of the statute allowed insurance carriers to include provisions in automobile insurance contracts which preclude stacking of uninsured motorist coverages.

In *Karabin,* we rejected the argument that "stacking" in the R.C. 3937.18(E) context applied only to intra-policy integration, stating at 166, 10 OBR at 499, 462 N.E. 2d at 406:

"Additionally, Karabin alleges that R.C. 3937.18(E) is ambiguous, lacking a definition of stacking, and should thus be construed strictly in favor of the insured. Karabin's assertion that the term 'stacking' applies only to intra-policy integration is without merit. This court has previously stated:

" 'The Legislature is presumed to know the decisions of this court, and, where it uses words or phrases that have been defined or construed by this court, it is presumed to have used them in the sense that they have been so defined or construed * * *.' *Tax Comm. of Ohio* v. *Security Savings Bank & Trust Co.* (1927), 117 Ohio St. 443, 450.

"In the past, this court has used the term 'stacking' to mean the lumping or adding together of payments, or the aggregation of coverage. *Grange Mut. Cas. Co.* v. *Volkmann, supra* [(1978), 54 Ohio St. 2d 58, 8 O.O. 3d 70, 374 N.E. 2d 1258]. Clearly, the term 'stacking' has been sufficiently defined to include within its meaning the pyramiding of coverage limits and policies issued by the same company."

In *Hedrick, supra,* the appellee, while riding a motorcycle owned by his father, was injured due to the negligence of an uninsured motorist. Appellee sought to recover under the uninsured motorist coverage of his father's policy with appellant Motorists Mutual Insurance Company covering two other family vehicles. Motorists denied coverage relying on a policy exclusion for injuries sustained in vehicles not covered by the policy. The trial court ruled in favor of appellee finding that the language did not satisfy the clear and conspicuous test set forth in *Ady* v. *West American Ins. Co.* (1982), 69 Ohio St. 2d 593, 23 O.O. 3d 495, 433 N.E. 2d 547. The court of appeals affirmed, finding that the provision was not a valid anti-stacking provision.

We reversed, finding that the relevant provision was a valid exclusionary provision consistent with the purpose of R.C. 3937.18:

"By the 1980 amendment to R.C. 3937.18, the legislature allowed insurance companies to include provisions in their policies to prohibit the stacking of insurance coverage. To construe the statute otherwise would defeat the objectives of the legislature in amending the statute.

"* * *

"Our holding today does not violate the public policy considerations previously espoused by this court that uninsured motorist coverage '* * * is designed to protect persons injured in automobile accidents from losses which, because of the tort-feasor's lack of liability coverage, would otherwise go uncompensated.' *Abate* v. *Pioneer Mut. Cas. Co.* (1970), 22 Ohio St. 2d 161, 165 [51 O.O. 2d 229]. That policy, with the legislatively mandated

changes as to anti-stacking and exclusionary language as herein found valid, remains the same today." *Hedrick, supra,* at 45, 22 OBR at 66, 488 N.E. 2d at 843.

Thus, we interpret R.C. 3937.18(G) to provide that express anti-stacking provisions, as well as other exclusionary provisions which would act to prevent insureds from receiving payments under more than one policy of insurance, are valid and enforceable policy limitations.

Under the *Karabin* and *Hedrick* tests, therefore, the policy language at issue must be examined to see if the public policy considerations of R.C. 3937.18 would still be satisfied by enforcing the intended exclusion or limitation and, if so, whether the clear, conspicuous and unambiguous language test of *Karabin* is satisfied.

The purpose of the first part of the disputed language is either to limit the liability of the insurer below policy limits or, if possible, to avoid or escape liability completely by denying coverage. The court of appeals below found that this type of clause is contrary to the public policy of R.C. 3937.18(A), citing *Curran, supra.* This finding is erroneous because *Hedrick, supra,* essentially held that the *Curran* prohibition was abrogated by the 1980 enactment of R.C. 3937.18(E), now 3937.18(G).

The second part of the disputed provision is an "escape" pro rata clause intended to prevent inter-policy stacking.

The court of appeals below points out that the majority view among the states is that this kind of clause is ineffective to preclude an insured from recovery up to the policy limits from each policy. However, this view conflicts with the intent of R.C. 3937.18(G), as applied by *Karabin* and *Hedrick.*

Finally, the lower court decisions and the briefs filed in this case contain detailed and conflicting arguments as to the degree of clarity, conspicuousness and ambiguity of the language at issue. Saccucci argues that the "anti-stacking" intent is not as clear and direct as the brief, pointed statement at issue in *Karabin, supra.* On the other hand, State Farm argues that the "clear and conspicuous" aspects of the policy—the bold type headings, italicized terms, and conspicuous placement in the text—are obvious when the language is viewed in the context of the entire policy. Although the language at issue is somewhat technical, it does not seem that the provision is so unclear or ambiguous as to be deceptive or unreasonably difficult to understand.

For the reasons stated above, we find that the policy provision at issue in this case is valid and enforceable to preclude stacking of uninsured motorist coverages. Accordingly, we hereby reverse the judgment of the court of appeals.

*Judgment reversed.*

MOYER, C.J., HOLMES and WRIGHT, JJ., concur.

SWEENEY, J., concurs in judgment only.

LOCHER, DOUGLAS and H. BROWN, JJ., dissent.

LOCHER, J., dissenting. Because the anti-stacking provisions in State Farm's policies are not worded clearly enough to be understood by an ordinary person to preclude the stacking of policies, I must dissent from today's majority opinion.

In *Karabin* v. *State Auto. Mut. Ins. Co.* (1984), 10 Ohio St. 3d 163, 167, 10 OBR 497, 500, 462 N.E. 2d 403, 407, this court ruled that an anti-stacking

provision in an insurance contract will be upheld if it is "clear and conspicuous and in no way deceptive." The anti-stacking provisions in the policies in question read as follows:

"Section III—UNINSURED MOTOR VEHICLE—COVERAGE U AND UNDERINSURED MOTOR VEHICLE—COVERAGE W

"* * *

"If There Is Other Uninsured Motor Vehicle Coverage

"* * *

"3. If the *insured* is injured while *occupying* a vehicle not owned by *you, your spouse* or any *relative,* this coverage applies:

"a. as excess to any uninsured motor vehicle coverage which applies to the vehicle as primary coverage, but

"b. only in the amount by which it exceeds the primary coverage.

"If coverage under more than one policy applies as excess:

"a. the total limit of liability shall not exceed the difference between the limit of liability of the coverage that applies as primary and the highest limit of liability of any one of the coverages that apply as excess; and

"b. we are liable only for our share. Our share is that per cent of the damages that the limit of liability of this coverage bears to the total of all uninsured motor vehicle coverage applicable as excess to the accident." (Emphasis *sic.*)

Although this provision is conspicuous enough and is not deceptive in any way, its meaning is by no means clear. A person of ordinary intellect would be unlikely to read this language and understand that it precludes the stacking of policies. Even the majority agrees that the language is "somewhat technical."

In my view, the best approach would be that taken by the court of appeals below, which stated that the purpose of such a provision must "be made manifest, with comprehension measured against that degree of intellect accorded the ordinary man." What good is such a provision if it can only be comprehended by lawyers and insurers? It is the ordinary purchaser of insurance who needs to understand what limits there are on the amount of liability coverage he or she can obtain. Otherwise, such purchasers could end up paying premiums on two or more identical policies, thinking that they are entitled to the benefits of all the policies they buy, and all the while being unknowingly limited to the benefits of a single policy. This is precisely what occurred in the instant case.

To avoid such a result, anti-stacking provisions should state in plain, ordinary language that the purchaser of the policy cannot stack policies in order to be covered for more than the liability limit of a single policy. An example of such a provision is one this court held in *Karabin* to be clearly worded:

" 'TWO OR MORE AUTO POLICIES

" 'If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.' " *Id.* at 166, 10 OBR at 499, 462 N.E. 2d at 406.

The anti-stacking language in the State Farm policies herein amounts to little more than legal mumbo-jumbo. For this reason, I cannot join the majority in reversing the judgment of the court of appeals below. I would affirm that judgment and disapprove the Cuyahoga appellate court's decision in *Alba* v. *State Farm Mut. Auto. Ins. Co.* (Jan. 24, 1985), No. 48502, unreported. Accordingly, I dissent.

DOUGLAS and H. BROWN, JJ., concur in the foregoing dissenting opinion.