Carey M. NIXON, Jr., et al., Plaintiff,

v.

**ALLSTATE INSURANCE CO., et al., Defendant.**

No. C–1–92–31.

United States District Court, S.D. Ohio, W.D.

Dec. 15, 1992.

Leo Breslin, Cincinnati, OH, for plaintiff.

James Gallagher, Columbus, OH, for defendant.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon the cross-motions for Summary Judgment (Docs. 20 and 21) and the responses thereto (Docs. 22 and 23).

### FINDINGS OF FACT

The material facts in this case are not in dispute.

1. On September 2, 1989, an automobile operated by Denver Pennington struck a vehicle which was being driven by Donna Davis.

2. The vehicle that Donna Davis was driving was owned by her mother, Freda Nixon.

3. Freda Nixon, Carey Nixon, (Donna Davis's father), and Judy Jefferies, (Donna Davis's sister), were passengers in the car that Donna Davis was driving.

4. Denver Pennington crossed the center line and hit the car Donna Davis was driving head-on. Donna Davis, Carey Nixon, Freda Nixon and Denver Pennington were all killed as a result of this accident. Judy Jefferies was seriously injured.

5. The accident occurred in Clay County, Kentucky. Denver Pennington was a resident of Kentucky. The Plaintiffs settled with Mr. Pennington's insurance company before this instant action was instituted. This settlement was with the knowledge and consent of the Plaintiffs' and their decedents' insurance companies. Mr. Pennington carried insurance in the amount of $50,000 per person and $100,000 per accident. The entire $100,000 was paid out.

6. Defendant Allstate Insurance Company ("Allstate") is an Illinois Corporation with its principle place of business in Northbrook, Illinois and does business in and generates revenues from business both in the State of Kentucky and in the State of Ohio. Allstate carried an insurance policy on the motor vehicle that Donna Davis was driving and was owned by her mother Freda Nixon. The policy issued to Freda Nixon contained underinsured motorist coverage in the amount of $100,000 per person and $300,000 per accident. As the primary underinsured motorist carrier, Allstate and the Plaintiffs' reached a settlement for the total amount $225,000.

7. Decedent Donna Davis carried a policy issued by State Farm Mutual Automobile Insurance Company (State Farm). Defendant State Farm is a legal reserve mutual company organized under the laws of the State of Illinois with its principle place of business in Bloomington, Illinois. It does business in and generates revenues from business in both the State of Kentucky and the State of Ohio. The State Farm policy also contained underinsured motorist coverage in the amount of $100,000 per person and $300,000 per accident. State Farm is the secondary underinsured motorist carrier and

the only Defendant remaining in the instant action.

## PLAINTIFFS' CONTENTIONS

The Plaintiffs claim that the entire $300,-000 of the State Farm policy issued to Donna Davis is available to satisfy their claims. The Plaintiffs urge this court to adopt Kentucky substantive law to determine this issue. In the alternative, the Plaintiffs argue that even if Ohio substantive law is applied the result would be the same, namely, that the entire amount under the policy would be available to settle the claims.

## DEFENDANT'S CONTENTION

The Defendant claims that under Ohio law, anti-stacking provisions relieve them of any obligations under their contract with the decedent Donna Davis.

## PROCEDURAL HISTORY

This case was originally filed in the Eastern District of Kentucky. Defendant Allstate moved to transfer this case to the Southern District of Ohio on December 3, 1991. The Eastern District of Kentucky granted that motion on January 8, 1992.

## OPINION

■ The summary judgment procedure under Fed.R.Civ.Pro. 56 is designed to secure a just, speedy, and inexpensive determination of any action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The parties have submitted this case on cross summary judgment motions. The parties agree to all the material facts as stated above.

## CHOICE OF LAW

■ The Plaintiffs argue that the substantive law of Kentucky should apply in this case. The Defendant argues that the Eastern District of Kentucky determined that the applicable law is that of Ohio. The Plaintiff countered with the argument that the Court for the Eastern District of Kentucky merely suggested that Ohio law applied in dicta within the order transferring this case to the

Southern District of Ohio. Both parties are correct to a degree.

Within the area of Conflicts of Laws there is a doctrine known as "Renvoi". Applying this doctrine, this court looks to the whole law of the State of Kentucky, including its conflicts law. Kentucky's conflicts law requires that the law of the state with the most significant relationship to the transaction and the parties be applied. *Lewis v. American Family Insurance Group,* 555 S.W.2d 579, 581 (Ky.1977). Here, all the Plaintiffs and their decedents are Ohio residents, State Farm conducts substantial business within Ohio and the contract was formed and signed in Ohio. Ohio obviously has the most significant relationship with this cause of action and the fact that the accident occurred in Kentucky is but a fortuitous happening. Therefore, Ohio law should and will be applied. In the United States, unlike in Europe, Renvoi is used only once. Accordingly, the internal, municipal laws, not the conflict laws, of Ohio are to be applied.

## INTERPRETATION OF THE INSURANCE POLICY UNDER OHIO LAW

■ The Ohio Revised Code § 3937.18(G) allows insurance companies to insert anti-stacking language within its insurance contract. That is not disputed by either party.

The Ohio R.C. § 3937.18(G) as amended in 1982 states:

> Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section [uninsured and underinsured motorist coverage] may include terms and conditions that preclude stacking of such coverages.

This language has been interpreted in a number of Ohio cases. In *Saccucci v. State Farm Mut. Auto Ins. Co.,* 32 Ohio St.3d 273, 276, 512 N.E.2d 1160 (1987) the Ohio Supreme Court stated:

> "The legislature is presumed to know the decisions of this court, and, where it uses words or phrases that have been defined or construed by this court, it is presumed to have used them in the sense that they

have been so defined or construed ..." *Tax Comm. of Ohio v. Security Savings Bank & Trust Co.* (1927), 117 Ohio St. 443, 450 [159 N.E. 570].

"In the past, this court has used the term 'stacking' to mean the lumping or adding together of payments or aggregation of coverage." *Grange Mut. Cas. Co. v. Volkmann* (1978), 54 Ohio St.2d 58, 8 O.O.3d 70, 374 N.E.2d 1258. Clearly, the term 'stacking' has been sufficiently defined to include within its meaning the pyramiding of coverage limits and policies issued by the **same company.** (emphasis added).

The Defendant cites to this court a number of cases as authority for the proposition that under Ohio anti-stacking laws it owes the Plaintiffs nothing under its insurance policy. The Court disagrees.

The cases the Defendant cite are factually distinguishable from the case at bar. In *Karubin v. State Automobile Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 462 N.E.2d 403, the Plaintiff had two insurance policies issued by the same company covering two vehicles and attempted to collect the maximum coverage from both policies for one accident. This situation is clearly within the contemplation of the anti-stacking legislation and was clearly prohibited by his insurance policy.

In *Hedrick v. Motorists Mut. Ins. Co.* (1986), 22 Ohio St.3d 42, 488 N.E.2d 840), the insured's son was injured in an accident. The son was driving a motorcycle owned by the insured and covered by a policy that paid out according to its coverage. The insured also had two other insurance policies from a different company that covered other vehicles the insured owned. The insured attempted to collect under these two other policies. Coverage was rightly denied because within the policy itself there was a provision which stated: "... We do not provided Uninsured motorist coverage for bodily injury sustained by any person: 1) while occupying, or when struck by, any motor vehicle owned by you or any family member which is not insured for this coverage under this policy.... Since the motorcycle was owned by an insured and was not covered under the policy, [the insurance company]

properly denied coverage for any injuries sustained by the [son] in this accident." *Hedrick, supra* at 43, 488 N.E.2d 840.

█ In each of these cases, the insured had more than one insurance policy. The anti-stacking provision is meant to prevent someone from collecting double or triple the maximum amount they insured themselves for and the amount the insurance company agreed to risk for one accident.

However, that is not the situation here. Donna Davis, through her estate, is attempting to collect from her one insurance policy benefits for which she paid premiums. She does not have multiple insurance policies under which she is trying to collect double or triple the amount for which she insured herself and those who might be travelling with her. If she has not yet collected the full per person amount she contracted for then she, as well as her passengers, may very well have claims against State Farm.

The case of *Wood v. Shepard* (1988), 38 Ohio St.3d 86, 526 N.E.2d 1089, indicates that each member of the car involved in the accident may have a separate claim. In that case James Wood, his wife and two children were involved in a car accident caused by Shepard. Wood's wife died as a result of injuries sustained in the accident. Wood and his children, as well as his wife's estate each made wrongful death claims as well as injury claims. In *State Farm v. Rose* (1991), 61 Ohio St.3d 528, 575 N.E.2d 459, *Wood* was limited and distinguished. The court made it clear that if the above situation occurred again, there could only be one recovery for wrongful death as only Mrs. Wood died. That holding is not inconsistent with the precept that all people who were involved in the accident 'wrongly' are able to each make an individual claim for their individual wrongful death or injury. This was made apparent when the court stated:

An automobile liability insurance policy may apply a single limit to separate claims arising out of a single bodily injury, ..., provided that such policy limitation tracks the corresponding limitation on liability coverage, and is unambiguously stated. 61 Ohio St.3d at 532 [575 N.E.2d 459]. *See*

*also, Burris v. Grange Mut. Ins. Co.* (1989) 46 Ohio St.3d 84 [545 N.E.2d 83].

Therefore, *Rose* and *Burris* are factually distinguishable from this case. In both of those cases one person was wrongly killed in a car accident. Several members of the respective families each tried to make a claim for the full amount for the wrongful death. The Ohio courts have made it clear that there is only one action in wrongful death or injury for each person involved wrongly in the accident. In this situation, the other family members who are attempting to make a claim upon Donna Davis's insurance policy (on behalf of themselves or in a representative capacity) were either killed or seriously injured in an accident involving a car that Donna Davis was driving.

Donna Davis specifically contracted for and paid for uninsured or underinsured motorist coverage to a certain dollar amount, namely $100,000 per person and $300,000 per accident. She should be covered up to the limit of that coverage. She insured herself for the possibility that an accident of this magnitude might occur and the insurance company, by accepting her premiums, agreed to this foreseeable risk.

The case of *Hower v. Motorists Mut. Ins.* (1991), unreported case No. L–90–268 (Lucas County) limits the amount Davis and the other members of the car can collect from State Farm. In this case a husband and wife were injured in a car accident. Between several insurance companies the Howers received the maximum amount their insurance provided per person. However, if this had not been the case, Motorists Mutual would have owed the Howers the difference between what they had already received and the per person limit on their own coverage.

Therefore, State Farm may set off any amount already paid to each plaintiff individually. Accordingly, under the terms of Donna Davis's policy, State Farm, at the most, owes the difference between what each plaintiff has already been paid and $100,000 up to their $300,000 limit. State Farm's argument that they owe nothing because the Nixon's policy had the same dollar amount coverage is unpersuasive. Stacking will only occur once each party receives the maximum that State Farm agreed to cover. For example, if each plaintiff has already received $100,000 from other insurance companies then State Farm owes nothing. To force State Farm to pay sums after each party has received $100,000 would incorporate the anti-stacking legislation and State Farm may and has protected itself from that eventuality. On the other hand, to allow State Farm to escape all coverage when the insured has not received the amount she has insured herself for would be contrary to public policy. Accordingly, until each party has reached their maximum, State Farm may be liable for claims up to each party's maximum ($100,-000) or State Farm's maximum pay out ($300,000), whichever is less.

### CONCLUSION

Defendant State Farm is liable to the Plaintiffs, less the amounts they have received from other insurance companies, up to the limits of $100,000 per person or $300,000 per accident.

IT IS SO ORDERED.