OPINION
Ronald, Elizabeth, and Robert Armentrout ("appellants") appeal the January 30, 2001 judgment entry by the Portage County Court of Common Pleas. The trial court granted the summary judgment motions of Westfield Insurance Company ("Westfield") and Progressive Casualty Insurance Company ("Progressive") and denied appellants' motions for summary judgment. The trial court determined that appellants were not entitled to any additional insurance coverage. For the foregoing reasons, we affirm the decision of the lower court.
On October 17, 1997, appellant Ronald was involved in an automobile accident. Appellant Ronald was operating a 1994 Toyota Corolla. Appellant Ronald sustained injuries as a result of the accident. David Lipstreu, a passenger in appellant's vehicle, also sustained injuries. Marvin Bolden ("Bolden") was alleged to have crossed the centerline while under the influence of alcohol and/or drugs, hitting appellant Ronald's vehicle. Bolden was operating a 1993 Ford Ranger owned by Donna Fresch ("Fresch"). While appellant Ronald was trapped in the wreckage, appellant Elizabeth, appellant Ronald's spouse, and appellant Robert, appellant Ronald's son, came to the scene of the accident.
At the time of the accident, Fresch was covered under an automobile insurance policy with Westfield. The 1993 Ford Ranger was a covered vehicle under that policy. The policy provided liability coverage in the amount of $50,000 per person and $100,000 "per occurrence." Additionally, at the time of the accident, appellant Ronald was covered under an automobile liability policy with Progressive. The 1994 Corolla was an insured vehicle under the policy. The policy included uninsured/underinsured motorist coverage in the amount of $100,000 "per person" and $300,000 "per occurrence." The 1994 Corolla was leased from Don Joseph, Inc.
On June 15, 1999, appellants filed a complaint against Bolden, Fresch, Westfield, and Progressive. Appellant Ronald alleged that, as a result of Bolden's negligence and/or reckless conduct, he sustained numerous injuries, loss of wages and earnings, future earnings, medical expenses, and future medical expenses. Appellants Elizabeth and Robert each alleged loss of consortium and severe emotional distress. Appellants also alleged that Fresch negligently entrusted her vehicle to Bolden. Appellants requested a declaratory judgment as to their rights under their policy with Progressive and the Westfield policies that were issued to Fresch and Don Joseph, Inc.
In its answer to appellants' complaint, Progressive asserted a counterclaim against appellants and a cross-claim against all co-defendants for declaratory judgment.
Westfield filed its answer to appellants' complaint and asserted a cross-claim against Bolden and Fresch and a counterclaim against appellants, requesting a declaratory judgment. Shortly thereafter, appellants filed an answer to Westfield's counterclaim, again requesting a declaratory judgment as to coverage under the policies of Fresch/Bolden and Don Joseph, Inc. Subsequently, Westfield filed an answer to Progressive's cross-claim.
Appellants and Westfield entered into a settlement agreement. Westfield paid the "per person" liability limit of $50,000 to appellants. In return, appellants released Fresch and Bolden from all liability; however, appellants could litigate the issue of entitlement to an additional $50,000 under Fresch's policy. Westfield paid an additional $50,000 under Fresch's policy to David Lipstreu. Appellants' underinsured/uninsured motorist claims, filed under the Westfield policy that was issued to Don Joseph Inc., were rejected. Appellants also asserted a claim for uninsured/underinsured motorist coverage under their policy with Progressive. Appellants reached a settlement with Progressive. Progressive paid appellants $50,000, representing the uninsured/underinsured motorist coverage "per person" limit. The parties agreed that appellants could litigate the issue of whether they were entitled to the remaining "per accident" uninsured/underinsured motorist coverage under the policy.
On March 23, 2000, Progressive filed a partial motion for summary judgment against appellants. Progressive asserted that appellants' collective recovery was limited to the $100,000 "per person" limit, subject to set off. As to appellant Elizabeth's loss of consortium claim, Progressive argued that it was a derivative claim that was included within the "per person" limit. As to appellant Robert's claim for loss of consortium, Progressive asserted that only a minor child could have a valid claim for loss of parental consortium. Progressive also contended that appellant Robert's emotional distress claim did not fit the definition of a "bodily injury" under the policy; therefore, it was not a separate bodily injury claim, but, at best, a derivative claim, subject to the "per person" limitation. Progressive added that appellant Robert's alleged injury was not caused by the accident itself. Progressive posited that appellants' claims were subject to the set off provision of the policy, limiting their claims to $50,000 collectively. As support of its motion, Progressive attached appellants' policy and the Westfield policies that were issued to Fresch and Don Joseph, Inc.
On May 1, 2000, Westfield filed a motion for summary judgment. Westfield contended that appellants were not insured under the Don Joseph, Inc. policy. Westfield emphasized that appellant Ronald was not an employee of Don Joseph, Inc. and was not operating a vehicle that was registered in Don Joseph's name. Westfield contended that appellants leased the 1994 Corolla years earlier from Toyota Motor Credit Corporation, not Don Joseph, Inc. Westfield noted that the title to the vehicle was transferred from Don Joseph, Inc. to Toyota Motor Credit on September 23, 1994. In support of its motion, Westfield attached the Don Joseph, Inc. policy and a copy of the title to the 1994 Corolla.
That same day, May 1, 2000, appellants filed three motions for partial summary judgment. The first motion pertained to the Westfield policy that was issued to Fresch. Appellants contended they were entitled to recover under Fresch's policy up to the "per occurrence" limits for each of their separate claims against Fresch and Bolden, totaling $200,000. In support, appellants attached, among other things, the affidavit of counsel, Robert E. Kerper, Jr., the lease for the 1994 Corolla, the settlement and conditional release that was executed between them and Westfield, and Fresch's policy. Appellants' second motion for partial summary judgment dealt with the Westfield policy that was issued to Don Joseph, Inc. Appellants asserted that they were entitled to underinsured motorist coverage under that policy, totaling the single policy limits of $1,000,000, along with any medical payment coverage, prejudgment interest, and reasonable attorney's fees. In support, appellants included, among other things, the affidavit of counsel, Attorney Kerper, the lease for the 1994 Corolla, and the Westfield policy that was issued to Don Joseph, Inc. Appellants' third motion for partial summary judgment pertained to their Progressive policy. Appellants argued they were entitled to underinsured motorist coverage in the amount of $300,000, the "per occurrence" limit. They contended the policy contained ambiguities. Appellants asserted that Progressive was permitted to set off only the amount that was actually paid to each appellant. In support, appellants submitted, among other things, the affidavit of Attorney Kerper, the lease for the 1994 Corolla, and the conditional release that they entered into with Progressive.
On June 5, 2000, in response to appellants' motion, Progressive filed a memorandum, incorporating the arguments set forth in its motion for summary judgment. Progressive contended the policy was clear in that all derivative claims, including loss of consortium, were subject to the per person limit. Progressive averred that the negligent infliction of emotional distress claim did not fit within appellants' policy. Progressive asserted that the uninsured motorist claims were subject to the set off provision of the policy, which limited them to $50,000 collectively. Progressive attached, among other things, a transcript of a hearing that was held concerning several motions that were previously filed with the trial court.
Thereafter, on June 28, 2000, Westfield filed a memorandum in response to appellants' motion as it pertained to Fresch's policy. Westfield stressed that the settlement and release agreement stated that appellants would litigate their entitlement to an additional $50,000 under Fresch's policy. Westfield contended that it paid $50,000 to David Lipstreu, exhausting the entire $100,000 "per accident" policy limit. Westfield attached the settlement and release agreement. That same day, Westfield also filed a memorandum in response to appellants' motion as to the Don Joseph, Inc. policy. Westfield argued that Don Joseph, Inc. was not the current owner of the 1994 Corolla. Westfield contended that the lease agreement was between Toyota Credit Company and appellants. Westfield stressed that, at the time of the accident, Don Joseph, Inc. had no connection to the 1994 Corolla.
On July 31, 2000, appellants filed responses to the memorandums filed by Progressive and Westfield. As to Progressive's arguments, appellants asserted that they were entitled to the full "per occurrence" limit since they had separate and distinct claims. As to Westfield's arguments, pertaining to Don Joseph Inc., appellants argued the policy provided bodily injury coverage for "mobile equipment," making it a motor vehicle policy; therefore, since underinsured/uninsured motorist coverage was not offered, it arose by operation of law.
The trial court filed a judgment entry on January 30, 2001. The trial court denied appellants' motions for partial summary judgment. However, the trial court granted Westfield's motion for summary judgment as to Fresch's policy, determining that the total coverage available to appellants was $100,000, the "per occurrence" limit, and that Westfield's payment of $50,000 to appellants and $50,000 to David Lipstreu exhausted that amount. The trial court also granted Westfield's motion for summary judgment, pertaining to Don Joseph, Inc., finding the policy did not provide coverage to appellants. Additionally, the trial court granted Progressive's motion for summary judgment, concluding that the limit for underinsured motorist coverage for appellants was the $100,000 "per person" limit of which Progressive had a $50,000 set off and already paid appellants $50,000.
Specifically, the trial court explained that appellants settled their claims with Bolden and Fresch and accepted payment from Westfield in the amount of $50,000. The trial court stated that this payment, along with the $50,000 payment to David Lipstreu, exhausted the total $100,000 "per accident" limit of Fresch's policy. The trial court added that appellants retained the right to litigate the issue of whether an additional $50,000 was available to them under Fresch's policy. The trial court determined that each accident triggered coverage, not each negligent act.
As to appellants' policy with Progressive, the trial court indicated that it provided underinsured motorist coverage with limits of $100,000 "per person" and $300,000 "per accident." The trial court determined that appellants Elizabeth and Robert did not state a cognizable claim for negligent infliction of emotional distress because such a claim was limited to where one witnessed or experienced a dangerous accident or appreciated actual physical peril. The trial court explained that appellants Elizabeth and Robert were called to the accident scene after it occurred. As to appellant Elizabeth and Robert's claims for loss of consortium, the trial court concluded that, under the policy, all claims of a derivative bodily injury were subject to the "per person" limit. The trial court added that appellant Robert had no claim for loss of consortium since he was an adult who was neither living with, or supported by, appellant Ronald. The trial court stated that appellants received $50,000 from the tortfeasors, entitling Progressive to a set off. The trial court determined that, taking into account the set off from the $100,000 "per person" limit, Progressive was obligated to pay appellants $50,000, which it already paid under the settlement agreement.
Finally, as to Westfield's policy that was issued to Don Joseph, Inc, the trial court stated that on September 23, 1994, Don Joseph, Inc. transferred the title of the 1994 Corolla to Toyota Motor Credit Corporation, making Toyota Motor Credit Corporation the titleholder at the time of the accident. The trial court concluded that, at the time of the accident, Don Joseph, Inc. had no ownership or other connection to appellants or the 1994 Corolla.
On February 27, 2001, appellants filed a timely notice of appeal. Appellants assert three assignments of error. Appellants' assignments of error will be set out as each one is reviewed.
We begin with the applicable law for reviewing a motion for summary judgment. On appeal, a reviewing court conducts a de novo review of a trial court's summary judgment entry. Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 1996-Ohio-336. A de novo review requires an independent review of the trial court's decision without any deference to it. Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. Summary judgment is a procedural device designed to avoid a formal trial when there is nothing left to litigate. Norris v. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1. Civ.R. 56(C) provides that summary judgment is proper when (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, viewing the evidence most strongly in favor of the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the non-moving party. SeeZivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367, 1998-Ohio-389.
Once a moving party satisfies their burden of supporting their motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine issue" exists to be litigated for trial. State ex rel. Zimmerman v. Tompkins,75 Ohio St.3d 447, 1996-Ohio-211. A "genuine issue" exists when a reasonable jury could return a verdict for the non-moving party based upon the evidence. Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242,248. The principal purpose for Civ.R. 56(E) is to allow the court to analyze the evidence in order to determine whether there exists an actual need for a formal trial. Ormet Primary Aluminum Corp. v. Employers Ins.of Wausau, 88 Ohio St.3d 292, 2000-Ohio-330.
Before addressing the arguments raised in appellants' assignments of error, it is necessary to set out the following guidelines for our review. When insurance coverage is provided by a policy, the scope of coverage is determined by a reasonable construction of the language of the insurance contract, as gathered from its ordinary and commonly understood meaning, to determine the intention of the parties. King v.Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, 211. Where an insurance contract is clear and unambiguous, its interpretation is a matter of law. Leber v. Smith, 70 Ohio St.3d 548, 1994-Ohio-361. An insurance policy is only ambiguous if its terms are subject to more than one reasonable interpretation. Hacker v. Dickman, 75 Ohio St.3d 118,1996-Ohio-98. To determine whether the terms of a contract are ambiguous, a court must generally give the terms and phrases their plain, ordinary, natural, or commonly accepted meaning. Gomolka v. StateAuto. Mut. Ins. (1982), 70 Ohio St.2d 166, 167-168. Only when an insurance contract is ambiguous can the ambiguity be resolved in favor of an insured. King, supra, 35 Ohio St.3d at syllabus; see, also, Lane v.Grange Mut. Companies (1989), 45 Ohio St.3d 63, 65.
Appellants' first assignment of error provides:
 "[1.] The Trial Court erred in granting Appellee Westfield Insurance Company's motion for summary judgment on Appellants' claims for liability coverage under an automobile liability policy issued by Appellee Westfield Insurance Company to one Donna Fresch."
In their first assignment of error, appellants contend they are entitled to an additional $100,000 "per occurrence" limit under Fresch's policy. Appellants assert the $100,000 "per occurrence" limit that was paid for Bolden's illegal conduct left no coverage for Fresch on the separate and distinct claims that they have against Fresch when she negligently entrusted her vehicle to Bolden. Appellants argue that they have separate claims for the negligence of Bolden and the negligent entrustment by Fresch.
At the time of the accident, the 1993 Ford Ranger was a covered vehicle under Fresch's policy with Westfield. The declarations page of Fresch's policy provided liability coverage for bodily injury with liability limits in the amounts of $50,000 for each person and $100,000 for each accident. Pursuant to the definitions of the policy, "bodily injury" means "bodily harm, sickness or disease, including death resulting therefrom." According to the provision titled Part A-Liability Coverage, Bolden was an insured since he was using a covered automobile.
 Of relevance, the policy provided the following limits of liability:
 "A. If the Declarations indicates a single limit of liability for each accident:
 "1. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:
"a. Insureds;
"b. Claims made;
"* * *.
 "B. If the Declarations indicates a split limit of liability for Bodily Injury Liability and Property Damage Liability, the limit of liability shown in the Declarations for `each person' for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one auto accident. Subject to this limit for `each person', the limit of liability shown in the Declarations for `each accident' for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.
"* * *
 "This is the most we will pay regardless of the number of:
"1. Insureds;
"2. Claims made;
"* * *."
Appellants contend that they are entitled to an additional $100,000 per occurrence limit under Fresch's policy since they brought separate claims for the negligence of Bolden and the negligent entrustment by Fresch. However, under the settlement agreement and release that was entered into between appellants and Westfield, the agreement clearly provided that appellants could pursue litigation of an additional $50,000 under the policy, but no more. Next, upon examination of the liability coverage of Fresch's policy that is set out above, no ambiguities are present. Giving the terms used their plain, ordinary, natural, and commonly accepted meaning, the maximum amount that Westfield was required to pay was $100,000 per accident for all damages regardless of the number of claims. Appellants acknowledged that they received $50,000 from Westfield, and it was undisputed that David Lipstreu received $50,000. This exhausted the maximum $100,000 "per accident" limit under Fresch's policy. The trial court correctly stated that, under Fresch's policy, each accident triggered coverage, not each negligent act.
Upon conducting an independent examination of the record, viewing the evidence most strongly in favor of appellants, reasonable minds can come to but one conclusion as to Westfield's motion for summary judgment pertaining to Fresch's policy. This conclusion is adverse to appellants. There is no genuine issue of fact remaining for a formal trial with respect to additional coverage under Fresch's policy. The trial court did not err in granting Westfield's motion for summary judgment as to Fresch's policy. Appellants' first assignment of error is without merit.
Appellants' second assignment of error states:
 "[2.] The Trial Court erred in granting Appellee Progressive Casualty Insurance Company's motion for summary judgment on Appellants' claims for underinsured motorist coverage under an automobile liability policy issued by Appellee Progressive Casualty Insurance Company to Appellants."
In their second assignment of error, appellants argue Progressive cannot limit their multiple and distinct claims against multiple tortfeasors to a "per person" limit. Appellants aver they are entitled to the $300,000 "per occurrence" limit since they have separate and distinct claims. Appellants contend the policy does not include language that limits their separate and distinct claims to a single "per person" limit. Appellants add that an ambiguity is created since the limits of liability section does not specify which limits apply, the "per person" or the "per occurrence." Appellants posit the "per person" language, limiting claims of bodily injury, is invalid, or at best, ambiguous. Appellants contend that, even assuming the "per person" limitation applies, appellant Ronald is entitled to an additional $95,000 and appellants Elizabeth and Robert are entitled to an additional $77,500 each.
At the time of the accident, appellants'1994 Toyota Corolla was a covered vehicle under appellants' Progressive policy. Appellant Ronald was listed as a named insured. The declarations page provides that appellants' policy included uninsured/underinsured motorist coverage with limits of liability in the amounts of $100,000 "per person" and $300,000 "per accident." The crux of appellants' second assignment of error is whether the $300,000 "per accident" limit of liability is applicable instead of the $100,000 "per person" limit, which the trial court determined was applicable.
As defined in the general definitions of the policy, "bodily injury" is "bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease." Part III of appellants' policy set forth uninsured/underinsured motorist coverage. Part III provides, in part:
 "Subject to the Limits of Liability, if you pay a premium for Uninsured/Underinsured Motorist Bodily Injury Coverage, we will pay for damages, which an insured person is entitled to recover from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle because of bodily injury:
"1. sustained by the insured person;
"2. caused by accident; and
 "3. arising out of the ownership, maintenance, or use of an uninsured motor vehicle or underinsured motor vehicle."
An insured person(s), under this section, is defined as (a.) you or a relative, and (b.) any person occupying a covered vehicle. Part III provides the following limits of liability for uninsured/underinsured motorist coverage:
 "The Limit of Liability shown on the Declarations Page
for the coverages under Part III is the most we will pay regardless of the number of:
"1. claims made;
"2. covered vehicles;
"3. insured persons;
"4. lawsuits brought;
"* * *.
"If your Declarations Page shows a split limit:
 "1. the amount shown for `each person' is the most we
will pay for all damages due to a bodily injury to one (1) person;
 "2. subject to that `each person' limit, the amount shown for `each accident' is the most we will pay for all damages due to a bodily injury to two (2) or more persons in any one (1) accident; and
"* * *.
 "The bodily injury Limit of Liability under this Part III for `each person' includes the aggregate of claims made for such bodily injury and all claims derived from such bodily injury, including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death."
In Wallace v. Balint, 94 Ohio St.3d 182, 2002-Ohio-480, the Supreme Court of Ohio held that R.C. 3937.44 allows an insurer to limit coverage to a single claim at the "per person" limit when all claims arise out of a single bodily injury. R.C. 3937.44 provides:
 "Any liability policy of insurance including, but not limited to, automobile liability or motor vehicle liability insurance that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one accident, may * * * include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident." (Effective October 20, 1994).
See, also, R.C. 3937.18(H). This court explained that R.C. 3937.44
allows an insurance company to treat all claims for bodily injury to one person as a single claim. Estate of Oliver v. Dewey (2000),144 Ohio App.3d 377, 384.
Appellant's policy was effective June 16, 1997 through December 16, 1997. The declarations page provides for a split limit under the uninsured/underinsured motorist coverage whereby $100,000 is afforded to "per person" and $300,000 "per accident." The Progressive policy clearly and unambiguously states that the bodily injury limit of liability under the uninsured/underinsured motorist coverage for "each person" includes all derivative claims from the bodily injury, including loss of consortium. Such limit of liability language is consistent with R.C.3937.44 and R.C. 3937.18(H). Appellants Elizabeth and Robert alleged claims for loss of consortium. The trial court erroneously concluded that Robert's claim for loss of consortium failed because he was an adult who was not living with, or supported by Ronald. In Rolf v. Tri State MotorTransit Co., 91 Ohio St.3d 380, 2001-Ohio-44, the Supreme Court of Ohio held that an adult child may pursue a cause of action for parental loss of consortium. Even so, the trial court's primary reason for rejecting Robert's claim was that the derivative claim was subject to the "per person" limit. Such claims directly resulted from the bodily injury that appellant Ronald sustained. Clearly and unambiguously, according to the terms of the policy, the alleged loss of consortium claims asserted by appellants Elizabeth and Robert fall within the $100,000 "per person" bodily injury liability limit, not the "per accident" limit.
Appellants Elizabeth and Robert also alleged claims for severe emotional distress as a result of being called to the scene of the accident and witnessing appellant Ronald trapped in the wreckage. In their complaint, appellants Elizabeth and Robert also alleged they suffered severe emotional distress as a result of viewing appellant Ronald trapped in the vehicle, bleeding profusely, suffering with severe injuries, and near death. This court has held that a plaintiff may recover for emotional distress caused by the negligence of another despite the lack of a contemporaneous physical injury. Williams v. WarrenGen. Hosp. (1996), 115 Ohio App.3d 87, 89. However, emotional distress, unaccompanied by physical injury, must be "severe and debilitating."Paugh v. Hanks (1983), 6 Ohio St.3d 72, paragraph 3 of the syllabus. To recover for severe emotional distress without a contemporaneous physical injury, an individual must demonstrate that he or she "was in fear of physical consequences to his [or her] own person." High v. Howard,64 Ohio St.3d 82, 1992-Ohio-125, overruled on other grounds, Gallimorev. Children's Hosp. Med. Center, 67 Ohio St.3d 244, 1993-Ohio-205. The "fear of physical consequences" must result from a real and existing physical peril. Williams, supra, at 90. A claim of negligent infliction of emotional distress is limited to instances where one has either witnessed or experienced a dangerous accident or appreciated the actual physical peril. Bunger v. Lawson Co., 82 Ohio St.3d 463, 1998-Ohio-407, citingHeiner v. Moretuzzo, 73 Ohio St.3d 80, 1995-Ohio-65.
Appellants Elizabeth and Robert do not allege that they were in fear of physical consequences to themselves or that there was a real and existing physical peril to them upon arriving at the accident scene. Appellants did not witness or experience the accident. Further, pursuant to Civ.R. 56, appellants did not provide any support to their claims for severe emotional distress, in the form of an affidavit or otherwise, demonstrating their severe emotional distress was "severe and debilitating." Appellants were required to do more than make mere allegations to support their opposition to Progressive's motion for summary judgment and/or their motion for partial summary judgment against Progressive. See Civ.R. 56(C) and (E). As such, appellants' claims of severe emotional distress do not survive summary judgment.
Finally, appellants' contend the $50,000 paid by Progressive was allocated among the three of them in the following manner: $5,000 to appellant Ronald, $22,500 to appellant Elizabeth, and $22,500 to appellant Robert. Appellants argue that, even assuming the $100,000 "per person" limitation applied, they were entitled to an additional $95,000 to appellant Ronald, $77,500 to appellant Elizabeth, and $77,500 to appellant Robert. First, the record does not indicate that such an allocation was ever made. Rather, the settlement and conditional release agreement that appellants entered into with Progressive simply states that Progressive was issuing appellants $50,000. Next, as explained above, all of appellants' claims fall within the "per person" limit of liability. Appellant Ronald's bodily injury claims and the loss of consortium claims by appellants Elizabeth and Robert fall within the $100,000 "per person" limit under the uninsured/underinsured motorist coverage of the policy.
Appellants received $50,000 from Westfield as to Fresch's policy. However, appellants' uninsured/underinsured motorist coverage with Progressive provides for a set off. In particular, the policy states:
 "The Limits of Liability under this Part III shall be reduced by all sums:
 "1. paid because of bodily injury or property damage by or on behalf of any persons or organization who may be legally responsible * * *."
Clearly and unambiguously the policy allows Progressive to set off the $50,000 received from Westfield against the $100,000 "per person" limit of liability owed to appellant under their uninsured/underinsured motorist coverage. As to the remaining balance of $50,000, pursuant to the settlement and conditional release entered into between appellants and Progressive, appellants received $50,000. Thus, Progressive tendered the amount owed to appellants.
Upon conducting an independent examination of the record, viewing the evidence most strongly in favor of appellants, reasonable minds can come to but one conclusion as to Progressive's motion for summary judgment on appellants' claims for uninsured/underinsured motorist coverage under their policy. This conclusion is adverse to appellants. Appellants' second assignment of error is without merit.
Appellants' final assignment of error provides:
 "[3.] The Trial Court erred in granting Appellee Westfield Insurance Company's motion for summary judgment on Appellants' claims for underinsured motorist coverage under the policies issued by Appellee Westfield Insurance Company to Don Joseph Toyota."
In their final assignment of error, appellants aver they are entitled to uninsured/underinsured coverage under the policy issued to Don Joseph, Inc. Appellants claim the policy did not provide such coverage; therefore, such coverage arose by operation of law with limits matching the liability coverage of $1,000,000. Appellants contend appellant Ronald was operating the vehicle under permission of Don Joseph Toyota since the lease had expired. Appellants assert the policy defines an insured as anyone occupying a covered auto, which includes the leased vehicle driven by appellant Ronald. Appellants contend that there is also uninsured coverage, arising by operation of law, under the umbrella policy since it is not provided. Appellants add that the leased auto exclusion only applies to the liability coverage, not the underinsured/uninsured coverage that arises by law.
On September 19, 1994, appellant Elizabeth leased a 1994 Toyota Corolla from Don Joseph, Inc. The lease explicitly stated that Don Joseph, Inc. would assign the lease to Toyota Motor Credit Corporation. The record contains a copy of the title to the 1994 Corolla. As of September 23, 1994, Toyota Motor Credit Corporation was the owner of the 1994 Corolla, not Don Joseph, Inc. In their memorandum in opposition to Westfield's motion for summary judgment as to Don Joseph, Inc., appellants did not address the issue of titleholder to the 1994 Corolla. See Civ.R. 56(E). The record clearly demonstrates that, at the time of the accident, the owner of the 1994 Corolla was Toyota Motor Credit Corporation. There was no connection, legal or otherwise, between appellants, the 1994 Corolla, and Don Joseph, Inc. at the time of the accident. The trial court correctly determined that appellants had no claims under the policy that Westfield issued to Don Joseph, Inc.
Accordingly, upon conducting an independent examination of the record, viewing the evidence most strongly in favor of appellants, reasonable minds can come to but one conclusion as to Westfield's motion for summary judgment pertaining to appellants' claims under the policy issued to Don Joseph, Inc. This conclusion is adverse to appellants. The trial court did not err in granting Westfield's motion for summary judgment as to Don Joseph Inc.'s policy. Appellants' third assignment of error is without merit.
For the foregoing reasons, appellants' three assignments of error are without merit. The judgment of the Portage County Court of Common Pleas is affirmed.
DONALD R. FORD, P.J., ROBERT A. NADER, J., concur.