[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 182.]

WALLACE, ADMR., ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* BALINT;
STATE FARM MUTUAL INSURANCE COMPANY, APPELLEE AND CROSS-
APPELLANT.

[Cite as *Wallace v. Balint,* 2002-Ohio-480.]

*Motor vehicles—Insurance—Uninsured/underinsured motorist coverage—*
*Applicability of antistacking provision in multiple policy family—*
*Intrafamily stacking of insurance policies does not occur, when.*

(No. 00-1572—Submitted September 18, 2001—Decided February 6, 2002.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Cuyahoga County, No.
75953.

————————————

DOUGLAS, J.

{¶ 1} James Wallace, Jr., died as a result of injuries sustained when his
motorcycle collided with an automobile driven by Dennis Balint. Balint's
negligence was allegedly the cause of the accident.

{¶ 2} Subsequently, appellants and cross-appellees, James Wallace, Sr.,
decedent's father, individually and as administrator of the estate of decedent,
decedent's mother, Wanda Wallace, decedent's brother, Christopher Wallace, and
decedent's sister, Katrina Wallace, filed an action in the court of common pleas for
personal injury and, pursuant to R.C. Chapter 2125, wrongful death against Balint
and appellee and cross-appellant, State Farm Mutual Automobile Insurance
Company.

{¶ 3} At the time of the accident, Balint was insured under a policy of
liability insurance through State Farm with liability limits of $25,000 per person
and $50,000 per accident. Decedent was the named insured under two policies of

liability insurance with State Farm, each providing uninsured/underinsured motorist coverage of $50,000 per person and $100,000 per accident.

{¶ 4} James Wallace, Sr., and Wanda Wallace together were the named insured on four other policies of insurance with State Farm, and each policy provided uninsured/underinsured motorist coverage with limits of $50,000 per person and $100,000 per accident. Christopher Wallace was the named insured on his own separate policy of insurance with State Farm that provided uninsured/underinsured motorist coverage with limits of $50,000 per person and $100,000 per accident. Katrina Wallace was the named insured on her own separate policy of insurance, also with State Farm, that provided uninsured/underinsured motorist coverage with limits of $25,000 per person and $50,000 per accident. Each of these policies was for a different vehicle. At the time of the accident, the Wallaces resided in the same household. As family members living in the same household, each of the Wallaces qualified as insureds under each of their eight State Farm policies.

{¶ 5} In their complaint, the Wallaces sought, under the terms of their eight underinsured motorist policies with State Farm, a total recovery of $800,000. This amount represents the combined total of the per-accident limits of the Wallaces' eight policies in addition to Balint's $50,000 liability coverage.

{¶ 6} While the case was pending before the court of common pleas, State Farm agreed to pay the estate of James Wallace, Jr., $25,000, the per-person limits of Balint's liability policy. State Farm paid the estate an additional $25,000, thereby exhausting the $50,000 underinsured motorist coverage limit on one of the two underinsured motorist policies of decedent.

{¶ 7} State Farm filed two motions for summary judgment. State Farm first moved for summary judgment as the provider of underinsured motorist coverage, arguing that the Wallaces were attempting to stack the coverage of each of the remaining seven policies and that each of the policies included a provision, pursuant

2

to the authority granted in former R.C. 3937.18(G)(2), precluding intrafamily stacking. (See 1994 Am.Sub.S.B. No. 20, 145 Ohio Laws, Part I, 211-212. The authorization is now at R.C. 3937.18[F][2].) Thus, State Farm argued, the Wallaces were not entitled to stack their separate underinsured motorist coverages on top of the underinsured motorist coverage that had already been paid pursuant to one of the decedent's policies. State Farm also argued that the Wallaces were not entitled to the per-accident limits of any of the underinsured motorist policies in question but were limited to a single claim subject to the per-person limit, since only one person had been physically injured. In a second motion for summary judgment, State Farm argued that coverage under Balint's liability policy was limited the same way.

{¶ 8} Thus, it was State Farm's contention (1) that pursuant to the antistacking policy provision and former R.C. 3937.18(G)(2), the Wallaces were not entitled to coverage under their other policies, (2) that if the Wallaces are entitled to anything under their policies they are limited by the policies and former R.C. 3937.18(H) to the per-person limit, and (3) that the Wallaces are limited by their policies and R.C. 3937.44 to a single claim subject to the per-person limit of Balint's liability policy. (See R.C. 3937.18[G], similar to former R.C. 3937.18[H], 149 Ohio Laws, Part I, 212.)

{¶ 9} As indicated, former R.C. 3937.18(G)(2) permits insurers to provide antistacking language in their policies. State Farm did so. Former R.C. 3937.18(H) permits insurers to treat all claims against uninsured motorist coverage as a single claim to the per-person limit where only one person suffers bodily injury in an accident. State Farm did so. R.C. 3937.44 permits insurers to treat all claims under a *liability* policy as a single claim subject to the per-person limit where only one person suffers bodily injury. State Farm did so.

**{¶ 10}** The trial court granted summary judgment to State Farm on both of its motions. The Wallaces appealed the trial court's judgment to the Cuyahoga County Court of Appeals.

**{¶ 11}** The court of appeals reviewed three issues. The first was whether the antistacking language of each of the policies was unambiguous and valid. The second was whether the Wallaces were limited to a single claim subject to the per-person limits of their underinsured motorist coverage. The third was whether the Wallaces were limited to a single claim subject to the per-person limit of Balint's liability policy. The court of appeals held that the antistacking language of the policies was valid and that the Wallaces were limited to one claim at the per-accident limit of Balint's liability policy. The court of appeals also found, however, that the parents of the decedent could recover up to the per-accident limits of one of their four policies. The Wallaces appealed to this court, and State Farm cross-appealed. In their appeal, the Wallaces contend that the antistacking language of the policies is invalid and that coverage at the per-accident limits of each of the eight policies should be available to them. State Farm contends in its cross-appeal that under the facts of this case there is no circumstance where the per-accident limits of any policy are available to the Wallaces. The case is now before us upon the allowance of a discretionary appeal and cross-appeal.

**{¶ 12}** In answering the first issue, the court of appeals determined that pursuant to R.C. 3937.18(G)(2), each State Farm policy contained a valid antistacking provision and that the Wallaces were attempting to impermissibly stack their underinsured motorist coverages. We agree that each of the policies in question did include a valid antistacking provision. We do not agree that the Wallaces were attempting to impermissibly stack their underinsured motorist coverage as to all of their policies.

**{¶ 13}** "Stacking" is defined in former R.C. 3937.18(G). Former R.C. 3937.18(G)(2) provides that intrafamily stacking "*is the aggregating of the limits*

4

*of such coverages* purchased by the same person or two or more family members of the same household." (Emphasis added.) "Stacking" is also defined as "the ability of *insured*, when covered by more than one insurance policy, to obtain benefits from *second* policy on same claim when recovery from first policy alone would be inadequate." (Emphasis added.) Black's Law Dictionary (6 Ed.1990) 1403. See *Nationwide Ins. Co. v. Gode* (1982), 187 Conn. 386, 388, 446 A.2d 1059, 1060, fn. 2, overruled on other grounds, *Covenant Ins. Co. v. Coon* (1991), 220 Conn. 30, 594 A.2d 977, and *Detroit Auto. Inter Ins. Exchange v. McMillan* (1980), 97 Mich.App. 687, 296 N.W.2d 147, reversed on other grounds (1983), 417 Mich. 946, 332 N.W.2d 149.

**{¶ 14}** "The concept of 'stacking' coverages * * * arises where the *same claimant* and the same loss are covered under multiple policies, or under multiple coverages contained in a single policy, and the amount available under one policy is inadequate to satisfy the damages alleged or awarded." (Emphasis added.) 12 Couch, Insurance (3 Ed.1998) 169-14 to 169-15, Section 169:4.[1]

**{¶ 15}** Unquestionably, the policies at issue herein each include, pursuant to R.C. 3937.18(G)(2), valid antistacking language. But that is not the end of the story.

**{¶ 16}** In *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 506, 620 N.E.2d 809, 814, we stated, " 'Intrafamily' stacking occurs when an individual or an entire family is insured by several separate uninsured/underinsured policies insuring different vehicles. When the *individual or a family member* is injured by

---

1. In other jurisdictions, stacking has been similarly defined. " 'Stacking' occurs when a *policy-holder* suffers a single collectible loss, but claims benefits under multiple insurance policies." (Emphasis added.) *Hammer v. State Farm Mut. Auto. Ins. Co.* (W.D.Ky.1996), 950 F.Supp 192, 194. " 'Stacking' refers to the practice of allowing *an insured* to add or 'stack' the limits of each vehicle covered under an insurance policy to pay for damages sustained in an accident." (Emphasis added.) *Harrison v. Allstate Ins. Co.* (Miss.1995), 662 So.2d 1092, 1093, at fn. 1. "Stacking is *the insured's* recovery of damages under more than one policy until the insured satisfies all of his damages or exhausts the limits of all available policies." (Emphasis added.) *Continental Ins. Co. v. Shives* (1997), 328 S.C. 470, 473, 492 S.E.2d 808, 810.

an uninsured or underinsured motorist, he or she will try to combine, or stack, each of the policies' underinsurance limits to compensate the injured *individual*." (Emphasis added.) As illustrated by *Savoie*, intrafamily stacking occurs when a *single* family member attempts to stack multiple coverages of the household.

{¶ 17} We agree that decedent's estate is attempting to aggregate the underinsured motorist benefits of decedent's second policy on top of the benefits already paid out of decedent's first policy. Likewise, decedent's parents, James and Wanda, seek to aggregate the underinsured motorist benefits under their four separate policies. What the estate and the decedent's parents seek clearly violates the antistacking language of the policies.

{¶ 18} However, given the definition of "stacking" as found in *Savoie* and in the other sources cited above, and the fact that each of the eight policies in question is a separate contract between State Farm and the underinsured motorist policy holder, clearly stacking does not occur when the estate is limited to only one of decedent's two policies, the parents are limited to only one of their four separate policies, and Christopher and Katrina are limited to their own individual policies. If the estate were permitted coverage under decedent's second policy, that would be stacking. If the parents were permitted coverage under more than one of the four separate policies that they have with State Farm, that would be stacking. If Christopher were permitted coverage under any of the other policies—in addition to his own separate policy—that would be stacking. The same is true of Katrina.

{¶ 19} The definitions of "stacking" set forth in the statute and in Black's, Couch, and *Savoie* make clear that stacking occurs when *one* insured seeks coverage under *more than one* policy issued to himself or other family members. If the estate, the parents, Christopher, and Katrina are each permitted coverage only under their own policy, then stacking never occurs, and the antistacking language is never operative. Herein, no individual claimant-insured is seeking to aggregate or access any policy other than his own.

**{¶ 20}** Furthermore, it would contradict the fundamental principles of the right to freely contract if we were to hold that each member of the Wallace family was somehow restricted in his or her separate contract with State Farm because of language in the policies of other family members. "The right to contract freely with the expectation that the contract shall endure according to its terms is as fundamental to our society as the right to write and to speak without restraint." *Blount v. Smith* (1967), 12 Ohio St.2d 41, 47, 41 O.O.2d 250, 253, 231 N.E.2d 301, 305.

**{¶ 21}** Each of the Wallaces was a named insured on a separate policy of insurance. They are each claiming the underinsured motorist coverage of their own separately held policies. However, the attempt of the estate and decedent's parents to aggregate their policies beyond their legitimate claims under a single separate policy issued to them, based upon their status as family members covered under other policies issued to other family members, is intrafamily stacking and is precluded by the language in the policies, as allowed by former R.C. 3937.18(G)(2).

**{¶ 22}** Accordingly, the antistacking provisions of the State Farm policy that preclude the "stacking of any and all coverage" do not exclude James and Wanda Wallace from the coverage of *one* of the underinsured motorist policies held separately in their names, but they are precluded from stacking the remaining three policies. The same is true of decedent's estate and policies. It follows then that the antistacking provisions of the Wallaces' policies do not apply to Christopher and Katrina Wallace, since, based upon the definition of stacking, neither of them is attempting to stack his or her separately held underinsured motorist insurance with any other coverage.

**{¶ 23}** To buttress our conclusion on this first issue, we look further at State Farm's arguments. State Farm cites *Dues v. Hodge* (1988), 36 Ohio St.3d 46, 48, 521 N.E.2d 789, 792, as a case in which this court upheld antistacking provisions very similar to those in the case at bar. While we have already resolved the issue

with respect to the validity of State Farm's antistacking provisions, *Dues* serves as an example of the stacking cases that have come before us. *Dues*, like other stacking cases before this court,[2] involved a single insured attempting to aggregate the coverages of more than one policy. Thus, these cases do not provide guidance on the antistacking issue of the case at bar. Christopher Wallace and Katrina Wallace are the named insureds on separate policies of underinsured motorist coverage, and they do not attempt to recover under any additional policies. While decedent's estate and decedent's parents do, in part, seek to stack coverages, we have dealt with the issue above.

**{¶ 24}** Based upon the foregoing, decedent's estate is precluded, pursuant to the antistacking provisions of decedent's policies, from recovering under decedent's second policy of underinsured motorist coverage. James and Wanda Wallace may recover benefits under only one underinsured motorist policy in which they are the named insureds and are precluded by the antistacking provisions of their policies from recovering under any additional underinsured motorist coverage. Christopher and Katrina may each recover under his or her separate underinsured motorist coverages.

**{¶ 25}** The second issue before us is whether James and Wanda Wallace are separately entitled to coverage up to the per-person limit of one of their underinsured motorist policies or whether together they are limited to a single claim

---

2. *Saccucci v. State Farm Mut. Auto. Ins. Co.* (1987), 32 Ohio St.3d 273, 512 N.E.2d 1160; *Hedrick v. Motorists Mut. Ins. Co.* (1986), 22 Ohio St.3d 42, 22 OBR 63, 488 N.E.2d 840, overruled on other grounds, *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438; *Auto-Owner's Mut. Ins. Co. v. Lewis* (1984), 10 Ohio St.3d 156, 10 OBR 490, 462 N.E.2d 396, overruled on other grounds, *Dues v. Hodge* (1988), 36 Ohio St.3d 46, 521 N.E.2d 789. For examples of cases in which family members attempt to stack multiple policies under which they are the insured, see *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, superseded by statute, 1994 Am.Sub.S.B. No. 20, 145 Ohio Laws, Part I, 239-240, Sections 7 through 10; *Wood v. Shepard* (1988), 38 Ohio St.3d 86, 526 N.E.2d 1089; *Benson v. Rosler* (1985), 19 Ohio St.3d 41, 19 OBR 35, 482 N.E.2d 599, limited in part on other grounds, *Wolfe v. Wolfe* (2000), 88 Ohio St.3d 246, 725 N.E.2d 261; *Gomolka v. State Auto. Mut. Ins. Co.* (1984), 15 Ohio St.3d 27, 15 OBR 67, 472 N.E.2d 700, overruled on other grounds, *In re Nationwide Ins. Co.* (1989), 45 Ohio St.3d 11, 543 N.E.2d 89.

at the per-person limit.  The court of appeals interpreted *Moore v. State Auto. Mut. Ins. Co.* (2000), 88 Ohio St.3d 27, 723 N.E.2d 97, as holding that each insured who is presumed, pursuant to R.C. 2125.02, to have suffered damages is entitled to separate coverage up to the per-accident limit of an uninsured/underinsured motorist policy.  We disagree.  In *Moore* we held, "R.C. 3937.18(A)(1), as amended by Am.Sub.S.B. No. 20, does not permit an insurer to limit uninsured motorist coverage in such a way that an insured must suffer bodily injury, sickness, or disease in order to recover damages from the insurer."  *Id.* at syllabus.  The issue in *Moore* was whether the insured, the mother of a victim of a fatal car accident, was covered by her uninsured motorist insurance even though the deceased was not insured under her policy.  The insurer in *Moore* denied the mother's claim.  We held that the mother could claim under her own policy.

{¶ 26} In the case at bar, State Farm has not denied coverage but argues that the applicable policy limits have been exhausted.  State Farm correctly states that it is not challenging *who* can recover, but rather *how much* they can recover.  We did not hold in *Moore* that as a result of a wrongful-death claim, the parents of a decedent were individually entitled to coverage at the per-accident limit of an underinsured motorist policy.  Thus, we reverse the holding of the court of appeals on this issue.

{¶ 27} Accordingly, we find that James and Wanda Wallace are together limited to the per-person limit of their State Farm policies.  R.C. 3937.18(H) allows insurers to "include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person."  Each policy held jointly by James and Wanda Wallace contained a valid limitation as authorized by R.C. 3937.18(H).  Therefore, James and Wanda Wallace are together confined to one claim at the per-person limit of a single policy.

**{¶ 28}** The third issue before us is whether the Wallaces are restricted to a single claim at the per-person limit of the Balint liability policy. Similar to R.C. 3937.18(H), R.C. 3937.44 permits insurers to limit coverage to a single claim at the per-person limit where all claims arise out of a single bodily injury. The Balint liability policy provides a valid per-person limit as permitted by R.C. 3937.44. Accordingly, the Wallaces are restricted by valid policy language to a single claim at the per-person limit of the Balint liability policy.

**{¶ 29}** Based upon the foregoing, the decedent's estate is precluded by the policy's antistacking provisions from any recovery under the second policy. The same is true of decedent's parents. They are entitled to coverage under one of the four, but no more, of their underinsured motorist policies. As to Christopher and Katrina Wallace, they each are entitled to coverage under their own individual policies. In addition, each of the Wallaces' claims is confined to the per-person limit of his or her policy. Finally, the claim against the Balint liability policy is confined to the per-person limit of that policy.

**{¶ 30}** The Wallaces ask this court to apply the reasonable-expectations doctrine. This doctrine is explained in 2 Restatement of Law 2d, Contracts (1981), Section 211(3), which provides:

"Where the other party has reason to believe that the party manifesting such assent would not do so if he knew that the writing contained a particular term, the term is not part of the agreement."

**{¶ 31}** Professor Keeton has described the reasonable-expectation doctrine: "The objectively reasonable expectations of applicants and beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Keeton, Insurance Law Rights at Variance with Policy Provisions (1970), 83 Harv.L.Rev. 961.

**{¶ 32}** The Wallaces challenge the mutuality of the insurance contracts that they entered into with State Farm. The Wallaces argue that they did not have an

opportunity to negotiate the terms of their contracts, that at the time the contract was executed the contracts were not even available, that the contracts were not delivered until well after they entered into the agreement, and that the endorsements, that later amended the contract, substantially altered their expectations of the original agreement. While the Wallaces raise compelling arguments, there is not yet a majority on this court willing to accept the reasonable-expectations doctrine.

{¶ 33} Based upon the foregoing, we affirm, albeit for different reasons, in part and reverse in part, the judgment of the court of appeals and remand this matter to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

GORMAN AND PFEIFER, JJ., CONCUR.

RESNICK, J., concurs in judgment only.

MOYER, C.J., and COOK, J., concur in judgment only in part and dissent in part.

LUNDBERG STRATTON, J., concurs in part and dissents in part.

ROBERT H. GORMAN, J., of the First Appellate District, sitting for F.E. SWEENEY, J.

_____

**COOK, J., concurring in judgment only in part and dissenting in part**.

{¶ 34} I respectfully dissent from the majority's determination that Katrina Wallace is entitled to UIM coverage under her individual policy. Because her policy limits are identical to the limits of the tortfeasor's coverage, there is no triggering of UIM coverage. See *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 287-288, 744 N.E.2d 719, 733-734 (Cook, J., concurring in part and dissenting in part).

In regard to the remainder of the majority's disposition of this case, I concur in judgment only.

MOYER, C.J., concurs in the foregoing opinion.

_____

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 35} I concur in the holding that the Wallaces are limited to the per-person limits of Balint's liability policy and of their underinsured motorist coverage. However, I must respectfully dissent from the lead opinion's analysis of the antistacking provisions in the Wallaces' eight insurance policies.

{¶ 36} The lead opinion sets forth the issue as "whether the antistacking language of each of the policies was unambiguous and valid." Yet absent from the opinion is the actual policy language being reviewed. Instead, the lead opinion relies upon definitions of the word "stacking" taken from various sources not connected to the actual policies. I find the analysis incomplete and legally inadequate, based as it is upon a dictionary definition of one word taken out of context with only a cursory reference to the contract provision itself.

{¶ 37} The lead opinion acknowledges the legality of antistacking language in the uninsured/underinsured motorist provisions of an automobile liability insurance policy. Former R.C. 3937.18(G) stated:

"(G) Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section may, *without regard to any premiums involved*, include terms and conditions that preclude *any and all stacking* of such coverages, *including but not limited to:*

"(1) interfamily stacking, which is the aggregating of the limits of such coverages by the same person or two or more persons, whether family members or not, who are not members of the same household.

"(2) intrafamily stacking, which is the *aggregating of the limits of such coverages purchased by the same person or two or more family members of the same household*." (Emphasis added.) 145 Ohio Laws, Part I, 211-212.

{¶ 38} The statute expressly permits insurance policies to preclude any and all stacking of UM/UIM coverages without regard to the number of premiums involved. This includes stacking of multiple coverages purchased by family members of the same household, without regard to the amount of premiums that the family members have paid. I believe that the lead opinion's interpretation of the State Farm provisions is clearly wrong because it is contrary to the statute.

{¶ 39} Although the lead opinion acknowledges that "each of the policies in question did include a valid antistacking provision," it does not give effect to these provisions. At this juncture, one would expect the analysis to focus upon the particular antistacking language of the policies at issue. Instead, the lead opinion ignores the policy language and examines the definition of the word "stacking" found in a dictionary and in a treatise to interpret the State Farm insurance provisions in order to reach a result that would permit stacking in some instances.

{¶ 40} The only legally sound approach would be to examine the policy language. Insurance coverage is "determined by a '* * * reasonable construction [of the contract] in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed.' " *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380, 1383, quoting *Dealers Dairy Products Co. v. Royal Ins. Co.* (1960), 170 Ohio St. 336, 10 O.O.2d 424, 164 N.E.2d 745, paragraph one of the syllabus.

{¶ 41} Each of the eight State Farm insurance policies issued to the Wallace family contains endorsement 6093C.1, Section 3e of which provides:

"e. The provision titled If There Is Other Similar Coverage is changed to read:

" 'If There Is Other Uninsured Motor Vehicle Coverage

" '1. Any and all stacking of uninsured motor vehicle coverage is precluded.

" '2. If Other Policies Issued By Us to You, Your Spouse or Any Relative Apply

" 'Subject to 1 above, if two or more motor vehicle liability policies issued by us to *you, your spouse* or any *relative* providing uninsured motor vehicle coverage apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.' " (Emphasis *sic*.)

**{¶ 42}** The appellate court specifically found "the subject antistacking provision to be unambiguous, clear and conspicuous. In particular, the language 'the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability' in section e. of endorsement 6093C.1 *can only be interpreted* to mean that the insured may not stack coverage." I believe that the court of appeals accurately describes the antistacking language. As permitted in R.C. 3937.18(G), the endorsement clearly and unambiguously prohibits "any and all stacking." As further clarification, the contracts explain that, when there are *multiple policies among relatives that apply to the same accident*, the insured's "total limits of liability under *all* such policies shall not exceed that of the policy with the highest limit of liability." The plain language of this provision conforms to R.C. 3937.18(G)(2), which allows an insurer to prohibit intrafamily stacking of multiple coverages purchased by family members.

**{¶ 43}** This court has held, "When the language of an insurance policy has a plain and ordinary meaning, it is unnecessary and impermissible for this court to resort to construction of that language." *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 166-167, 10 OBR 497, 499, 462 N.E.2d 403, 406. Here, the lead opinion agrees that each policy contained a valid antistacking provision. The lead opinion makes no finding that the antistacking provision is unclear or ambiguous. But the opinion ignores the policy language and the appellate court's

14

finding that it is clear and unambiguous. Instead, the lead opinion chooses to confine its analysis to a simple dictionary definition of one word in order to construe an entire contractual provision. I do not agree.

{¶ 44} The statute and the policy language clearly contemplate the situation presented here, *i.e.*, when two or more family members purchase multiple policies from the same insurer. The statute allows the policies to prohibit stacking of multiple coverages in that situation, *without regard to the number of premiums paid*. Although the lead opinion focuses on the fact that each named insured is claiming UIM coverage under his or her own separately held policies, this has no significance. Full payment up to the per-person limit under each family member's policy is exactly what the contract explicitly prohibits. I believe that the lead opinion's conclusion is, in fact, contrary to the statute, which expressly allows a policy to preclude stacking of multiple coverages *without regard to the number of premiums paid,* and contrary to the policy language as well.

{¶ 45} Because I believe that the lead opinion's antistacking analysis is contrary to law, I respectfully dissent from that portion of the opinion.

———————————

*Don C. Iler Co., L.P.A.,* and *Don C. Iler,* for appellants and cross-appellees.

*Davis & Young* and *Henry A. Hentemann,* for appellees and cross-appellants.

*Elk & Elk Co., L.P.A.,* and *Todd O. Rosenberg,* for *amicus curiae* Ohio Academy of Trial Lawyers, in support of appellants and cross-appellees.

———————————