JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, State Farm Insurance Company, appeals from a common pleas court order granting summary judgment for plaintiff, Patti King, executrix of the estate of Michael King, on her claim for underinsured motorists insurance coverage on behalf of the wrongful death beneficiaries. For the reasons which follow, we reverse.
 {¶ 2} The complaint in this case was filed April 5, 1999. It alleged that plaintiff's decedent, Michael King, was struck and killed by an automobile driven by Arthur Gallo on November 14, 1997. A subsequent lawsuit against Gallo was settled for $50,000, the limit of available insurance coverage applicable to this claim. In the complaint in this case, plaintiff claimed that Gallo was underinsured, and as a result, State Farm, which had issued a policy providing automobile liability insurance to the decedent and his family, was required to provide underinsured motorists coverage to them.
 {¶ 3} State Farm and plaintiff filed cross-motions for summary judgment. The parties agreed upon the following facts. Michael King was an insured under two automobile liability insurance policies issued by State Farm. Both of these policies included express uninsured motor vehicle coverage with limits of $50,000 per person and $100,000 per accident. These policies provided, in pertinent part:
 {¶ 4} "We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motorvehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.
 {¶ 5} "There is no coverage until the limits of liability of all bodily injury liability bonds and policies that apply have been used up by payment of judgments or settlements.
 {¶ 6} "Uninsured Motor Vehicle — means:
 {¶ 7} "1. a land motor vehicle, the ownership, maintenance or use of which is:
 {¶ 8} "* * *
 {¶ 9} "b. insured or bonded for bodily injury liability at the time of the accident; but
 {¶ 10} "* * *
 {¶ 11} "2. the limits of liability:
 {¶ 12} are less than the limits you carry for uninsured motor vehicle coverage under this policy; or
 {¶ 13} have been reduced by payments to persons other than aninsured to an amount less than the limits you carry for uninsured motor vehicle coverage under this policy;
 {¶ 14} "* * *
 {¶ 15} "Insured — means the person or persons covered by uninsured motor vehicle coverage.
 {¶ 16} "This is:
 {¶ 17} "1. the first person named in the declarations;
 {¶ 18} "2. his or her spouse;
 {¶ 19} "3. their relatives; * * *
 {¶ 20} "* * *
 {¶ 21} "Limits of Liability
 {¶ 22} "1. The amount of coverage is shown on the declarations page under "Limits of Liability — U — Each Person, Each Accident". [sic] Under "Each Person" is the amount of coverage for all damages, including damages for care and loss of services, arising out of and due to bodily injury to one person. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", [sic] for all such damages arising out of and due to bodilyinjury to two or more persons in the same accident.
 {¶ 23} "* * *
 {¶ 24} "3. The limits of liability are not increased because:
 {¶ 25} more than one vehicle is insured under this policy; or
 {¶ 26} more than one person is insured at the time of the accident.
 {¶ 27} "4. The maximum total amount payable to all insureds under this coverage is the difference between the "each accident" limits of liability of this coverage and the amount paid to all insureds by or for any person or organization who is or may be held legally liable for thebodily injury.
 {¶ 28} "Subject to the above, the most we pay for all damages arising out of and due to bodily injury to one person is the lesser of:
 {¶ 29} "1. the difference between the "each person" limits of liability of this coverage, and the amount paid for that bodily injury by or for any person or organization who is or may be held legally liable for the bodily injury; or
 {¶ 30} "2. the difference between the amount of damages for suchbodily injury, and the amount paid for that bodily injury by or for anyperson or organization who is or who may be held legally liable for thebodily injury.
 {¶ 31} The $50,000 paid by the tortfeasor's insurance was distributed as follows. Attorney's fees and expenses of $20,000 were paid out of the settlement amount. The remaining $30,000 was then distributed by the probate court among the wrongful death beneficiaries, $20,000 to the surviving spouse and $5,000 to each of the two surviving minor children. The parties agreed that the beneficiaries suffered damages in excess of $50,000.
 {¶ 32} The common pleas court entered a judgment on December 4, 2000, finding that all facts were undisputed and that plaintiff was entitled to judgment as a matter of law. The parties subsequently stipulated that the plaintiff's damages were "at least $100,000, the limits of the defendant's available coverage less the $50,000 already received for a net of $50,000." The court entered judgment against the defendant for this amount. State Farm's appeal from these orders was dismissed for lack of a final appealable order because the trial court had not declared the parties rights or construed the document and law under consideration.
 {¶ 33} On March 5, 2003, the court entered judgment for plaintiff again. The court found that the decedent and his widow were named insureds under the policies, and their two children were also insureds. It further found that they were legally entitled to recover damages against the tortfeasor, whose negligence caused the accident, and that all such damages arose from the decedent's death. The court then found:
 {¶ 34} "(5) State Farm failed to clearly and unambiguously consolidate all wrongful death claims into a single limit or claim. The provisions in the policy concerning wrongful death can reasonably be construed with more than one interpretation and therefore must be construed in favor of the insured. [Citation omitted.]
 {¶ 35} "(6) The amount available for payment to each beneficiary under the tortfeasor's policy is less than the amount available from either of the State Farm Policies to each beneficiary. Accordingly, Gallo is an underinsured motorist.
 {¶ 36} "(7) After setoff of Gallo's liability insurer's limits of $50,000.00, State Farm provides $50,000.00 of UM/UIM coverage available to respond to damages arising from the Accident."
 {¶ 37} The court therefore entered summary judgment for plaintiffs for $50,000.
 Law and Analysis {¶ 38} We review de novo the common pleas court's decision to grant summary judgment to the plaintiff, applying the same standard the trial court used. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35. Summary judgment is appropriate if (a) there are no genuine issues as to any material fact, (b) the movant is entitled to judgment as a matter of law, and (c) construing the evidence in the light most favorable to the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-movant. Zivich v. Mentor Soccer Club
(1998), 82 Ohio St.3d 367, 369-370.
 {¶ 39} The issue in this appeal is a legal one — the construction of the insurance contract. Our role is to give effect to the parties' intent, as reflected by the language they used. Westfield Ins.Co. V. Galatis (2003), 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. In general, the words in a contract of insurance, as in any contract, must be given their plain and ordinary meaning unless some other meaning is clearly apparent from the content of the policy. Id. Where the policy language is reasonably susceptible to more than one interpretation, an insurance contract will be construed strictly against the insurer and liberally in favor of the insured. King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, syllabus. This rule will not be applied so as to provide an unreasonable interpretation of the policy language. Morfoot v.Stake (1963), 174 Ohio St. 506, paragraph one of the syllabus. Furthermore, construction in favor of the insured does not equate to construction in favor of the plaintiff. "[W]here `the plaintiff is not a party to [the] contract of insurance * * *, [the plaintiff] is not in a position to urge, as one of the parties, that the contract be construed strictly against the other party.'" Westfield, 100 Ohio St.3d at ¶ 14 (quoting Cook v. Kozell (1964), 176 Ohio St. 332, 336.
 {¶ 40} State Farm argues that its policy is unambiguous and clearly provides underinsured motorist coverage equal to the per-person limit for all claims derived from the death of one person. It asserts that this limitation is permissible under R.C. 3937.18(H), as amended by S.B. No. 20. While the plaintiff agrees that R.C. 3937.18(H) allows State Farm to consolidate all wrongful death claims into a single per-person limit, plaintiff contends the policy is ambiguous and can be reasonably construed to provide coverage up to the per person limit for each wrongful death beneficiary. Plaintiff claims that each beneficiary is entitled to recover the difference between the per-person limit under the underinsured motorist coverage and the amount he or she received from the tortfeasor's insurer.
 {¶ 41} The language upon which plaintiff relies in finding this ambiguity is the second paragraph numbered "1" under "Limits of Liability." This paragraph states that the most State Farm will pay for "all damages arising out of and due to bodily injury to one person" [emphasis added] is the difference between the "each person" limit under the underinsured motorist coverage and the amount paid for that bodily injury by or for the person legally liable for it. Plaintiff contends that this provision can be construed to mean that State Farm will pay the "each person" limit for damages suffered by each beneficiary, up to the "each accident" limit of $100,000.
 {¶ 42} We do not find any ambiguity in this provision. In determining whether there is an ambiguity, we must apply ordinary rules of grammar, and consider the provision at issue in context. When we do so, we find that the prepositional phrase "to one person" is clearly intended to modify "bodily injury," not "damages." This construction is obvious for at least two reasons. First, as a general matter, a prepositional phrase follows the phrase it modifies. Here, the phrase "to one person" immediately follows "bodily injury," and thus should be construed to modify "bodily injury" not "damages." In other words, the phrase should be construed precisely as it is written: "* * * the most we pay for all damages * * * due to bodily injury to one person is * * *." This reading comports with the cardinal rule of contract construction, that we should give the contract terms their plain and ordinary meaning.
 {¶ 43} Second, throughout the uninsured motorist coverage, the insured is referred to as "the insured" (except in the definition of who is an insured). Others are referred to as "persons." The word "person" is used in this context, rather than "insured." This choice of terminology precludes us from construing this provision to set a limit on the damages due to each insured from a bodily injury. Rather, a more reasonable construction reads together the phrases "bodily injury" and "to one person." The person described is the one injured (who may or may not be insured), not the one to whom damages may be due (who must be insured to be entitled to uninsured motorist coverage). Read as a whole, the "each person" limit is applied to "all" damages which any number of insureds may be entitled to collect due to bodily injury to one person.
 {¶ 44} This construction comports with other parts of the uninsured motorist coverage. The first paragraph "1" under "Limits of Liability" uses identical language except for the insertion, after the word "damages," of the phrase "including damages for care and loss of services." This addition makes it even more clear that "to one person" modifies "bodily injury" not "damages." Furthermore, paragraph "3" under "Limits of Liability" provides that the limits of liability are not increased because more than one person is insured at the time of the accident. Plaintiff's reading would contradict this paragraph by providing each insured with a separate "each person" limit. Our construction of the limits of liability avoids any contradiction.
 {¶ 45} Plaintiff's reliance on Nicolini-Brownfield v. Eigensee
(Sept. 16, 1999), Franklin App. Nos. 98AP-1243 and 98AP-1244, is misplaced. The policy language which the court in Nicolini found ambiguous stated that "[t]he bodily injury limit shown for any one person is for all legal damages, including all derivative claims, claimed by anyone arising out of and due to bodily injury to one person as a result of one occurrence." The court found that this provision could reasonably be construed to mean that the per-person limit for bodily injury claims applies to "anyone," including anyone who had a derivative claim, and that no separate limits would apply to such claims. "In other words, * * * `anyone' who brings a derivative claim under the policy is limited to the $100,000 per-person limit and is not entitled to a different or separate limit." This language is markedly different from the policy language at issue here. The finding of an ambiguity in the policy at issue inNicolini does not compel a finding of an ambiguity in this case.
 {¶ 46} For these reasons, we hold that the amount of coverage provided by the State Farm policies at issue here is the $50,000 "each person" limit.
 {¶ 47} Plaintiffs here concede that they cannot stack the two State Farm policies, but argue that some may make a claim under one of the two policies and others may make a claim under the other, allowing them to claim $50,000 under each policy. The Supreme Court in Wallace v. Balint
(2002), 94 Ohio St.3d 182, expressly rejected such a proposition. InWallace, James and Wanda Wallace together were named insureds on four policies of insurance. The court determined that the insurer could and did validly restrict coverage under multiple policies to a single claim at the per-person limit of the policy with the highest amount of coverage, where all claims arose out of a single bodily injury. Wallace,94 Ohio St.3d at 188-189.
 {¶ 48} Likewise, in this case, each policy contains a provision stating that, "[i]f two or more motor vehicle liability policies issued by us to you providing uninsured motor vehicle coverage apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability." This provision precludes appellees, who are insured under both policies, from making separate claims under the two policies and collecting more than the coverage limit of one of the policies.[1]
 {¶ 49} Finally, the parties dispute whether, in determining if the tortfeasor was underinsured, the court should consider the amount recovered by each beneficiary in relation to the "each person" limit, or whether the entire amount paid by the tortfeasor's insurer should be compared to the "each person" limit in the State Farm policy.
 {¶ 50} The Ohio Supreme Court has held that, for purposes of setting off the tortfeasor's liability coverage against uninsured motorist coverage limits, R.C. 3937.18(A)(2) requires "a comparison of the amounts that are actually accessible to the claimant from the tortfeasor's automobile liability insurance carrier and the claimant's own underinsured motorist coverage limits." Clark v. Scarpelli (2001),91 Ohio St.3d 271, 276. A strict comparison of the coverages available under the tortfeasor's liability policy and the underinsured motorist coverage is improper, because claims of multiple claimants against the tortfeasor's liability insurance may reduce the amount available for payment to the insured. Instead, the appropriate comparison is the amount available under the tortfeasor's liability policy for the benefit of insureds who are claiming underinsured motorist's benefits versus the amount of uninsured motorist coverage.
 {¶ 51} The Court further expanded on this definition in Littrellv. Wigglesworth (2001), 91 Ohio St.3d 425. One of the three cases at issue in Littrell is particularly apt here. In Stickney v. State FarmMut. Auto Ins. Co., the decedent's representative recovered the full amount of the tortfeasor's insurance, $125,000, for the benefit of the next of kin. Three of these beneficiaries did not actually share in the settlement proceeds. These beneficiaries claimed they were entitled to the full amount of coverage under State Farm policies issued to the decedent and his family with underinsured motorist coverage limits of $100,000 per person. However, the court determined that the amount paid by the tortfeasor's insurer for the benefit of the next of kin was the "amount available for payment" to all the wrongful death beneficiaries, and because this amount exceeded the amount that would be available under the uninsured motorist coverage, the wrongful death beneficiaries were not entitled to underinsured motorist benefits.
 {¶ 52} In this case, the amount of coverage actually afforded to the wrongful death claimants under the tortfeasor's insurance was $50,000. If the tortfeasor had not been insured, the amount that would have been available to all of these claimants under the uninsured motorist coverage in the State Farm policies here would also be $50,000. Therefore, plaintiffs here are not entitled to underinsured motorist coverage.
 {¶ 53} Accordingly, we reverse and remand to the common pleas court with instructions to enter judgment for State Farm.
 {¶ 54} This cause is reversed and remanded to the lower court with instructions to enter judgment for the defendant.
Ann Dyke, J., Concurs.
Sean C. Gallagher, J., Dissents with separate dissenting opinion.
[1] The declarations pages on the two policies at issue here indicate that premiums were charged for uninsured motorist coverage under both policies. We question the validity of these duplicative charges, in light of the limitation on coverage. The parties have not litigated this issue in this case, however.