OPINION
{¶ 1} Defendant-appellant, State Farm Mutual Automobile Insurance Company ("State Farm") appeals from a judgment of the Franklin County Court of Common Pleas finding that plaintiff-appellee, Julee Camp, is entitled to uninsured motorist ("UM") benefits under an insurance policy issued by defendant. For the reasons that follow, we reverse and remand.
 {¶ 2} This case arises from a motor vehicle accident that occurred on May 23, 1998, in Shelby County, Kentucky. Plaintiff's non-resident mother, Sandra Thompson, was riding as a passenger on a motorcycle that was being operated by her husband, Robert Thompson. Mr. Thompson lost control of the motorcycle, and the vehicle slid left of center into the path of oncoming traffic. Ms. Thompson died as a result of injuries sustained in the accident.
 {¶ 3} On May 14, 2001, plaintiff filed a declaratory judgment action against defendant in the Franklin County Court of Common Pleas, seeking a determination of the rights and obligations under an automobile insurance policy issued by defendant (the "State Farm policy"). Plaintiff alleged entitlement to underinsured motorist ("UIM") benefits under the State Farm policy for the wrongful death of her mother, Ms. Thompson. On June 20, 2001, defendant State Farm filed an answer. On June 12, 2002, the trial court filed an entry indicating that legal issues remained unresolved regarding whether coverage was available to plaintiff under the policy issued by defendant. The parties agreed that the legal issues were to be submitted to the trial court on briefs of the parties and upon a stipulation of facts.
 {¶ 4} On October 4, 2002, the parties filed a stipulation of facts. In addition to describing the circumstances of the motor vehicle accident, as set forth above, the stipulation set forth the following facts. On January 31, 1997, plaintiff's husband, Steve Camp, purchased the State Farm policy. The policy was in full force and effect from January 31, 1997, to January 31, 1999, and a copy of the policy was attached to the stipulation of facts. At all pertinent times, plaintiff qualified as an insured under the State Farm policy. The policy contains UM/UIM coverage with limits of $50,000 for "each person," and $100,000 for "each accident," as those terms are defined in the policy. At the time of the accident, the tortfeasor, Mr. Thompson, was a named insured on a policy issued by Progressive Casualty Insurance Company (the "Progressive policy"). The Progressive policy contained liability coverage with an "each person" limit of $100,000, and UM/UIM coverage with an "each person" limit of $100,000. Ms. Thompson was an insured under the Progressive policy.
 {¶ 5} On May 21, 1999, plaintiff notified defendant of the accident, and on June 2, 1999, defendant responded. In the response letter, which was attached as "Exhibit D" to the stipulation of facts, a claim specialist for defendant informed plaintiff's counsel that case law supported no coverage for the UM claim. The stipulation of facts indicates that defendant requested a sworn statement of plaintiff in order to assess her potential claim. Plaintiff requested the postponement of the sworn statement until the Supreme Court of Ohio ruled upon several cases potentially impacting her right to coverage. Counsel for defendant informed plaintiff's counsel that the policy required suit to be filed against State Farm no later than May 23, 2000.
 {¶ 6} On May 23, 2000, plaintiff's counsel orally notified defendant that plaintiff had settled with the tortfeasor. This was the first notice received by defendant as to settlement. Counsel for defendant asked plaintiff to provide documentation regarding the settlement. On October 19, 2000, plaintiff's counsel notified, in writing, defendant's counsel that the settlement was reached on May 17, 2000. Counsel for defendant again asked for information regarding the settlement with the tortfeasor. On December 4, 2000, plaintiff sent a release and an entry approving settlement to defendant. The release and entry indicated that Progressive paid $100,000 in settlement of claims arising out of the death of plaintiff's mother. Because Ms. Thompson was the spouse of Mr. Thompson, her estate was precluded from presenting a liability claim under the Progressive policy, and, therefore, was forced to present a claim for UM/UIM coverage under the policy. Minus attorney's fees, the settlement monies were equally divided between plaintiff and her brother. The release was signed by plaintiff, as administrator to the estate of her mother, Ms. Thompson. As stated by the trial court's April 28, 2006 judgment entry, plaintiff received $50,000 in UM/UIM coverage benefits from Progressive.
 {¶ 7} As set forth above, plaintiff filed her action against defendant on May 14, 2001. Plaintiff did not file suit against the tortfeasor, Mr. Thompson, and the statute of limitations has run as to a possible tort action against Mr. Thompson. On July 8, 2002 defendant's counsel asked plaintiff's counsel for a clarification as to whether there had been a settlement with the tortfeasor's liabilityinsurer, or whether the monies were paid pursuant to an UM/UIM policy. Plaintiff's counsel responded to the inquiry by clarifying that the settlement was for money due and owing under the UM/UIM coverage section of the Progressive policy. Progressive's payment of $100,000 exhausted the funds available under the UM/UIM coverage of the Progressive policy.
 {¶ 8} On February 11, 2003, the trial court issued a decision regarding plaintiff's October 31, 2002 trial brief. In its decision, the trial court noted that defendant had not filed a trial brief, and that the parties had filed a stipulation of facts. The trial court observed that plaintiff claimed that she is an insured under the State Farm policy, and that she is entitled to UM benefits under that policy for the wrongful death of Ms. Thompson. The trial court found in favor of plaintiff as to the availability of UM/UIM coverage under the State Farm policy. The trial court scheduled a hearing on the issue of damages for April 4, 2003.
 {¶ 9} On March 13, 2003, defendant filed a motion to reconsider the trial court's decision as well as a motion for summary judgment. Defendant requested that the trial court stay the April 4, 2003 damages hearing. On April 7, 2003, the trial court filed a decision and entry granting defendant's motion to stay the April 4, 2003 damages hearing and scheduled a status conference on the case. On April 23, 2003, the trial court ordered defendant to file a trial brief no later than May 2, 2003. On May 2, 2003, defendant filed a trial brief, and on May 9, 2003, plaintiff filed a reply trial brief.
 {¶ 10} On December 20, 2005, the trial court issued a decision regarding the parties' trial briefs. The trial court also granted defendant's motion to reconsider the trial court's previous decision regarding plaintiff's trial brief and denied defendant's motion for summary judgment. In its decision, the trial court found that plaintiff was entitled to UM/UIM coverage under the policy issued by defendant. The trial court referred the matter to a magistrate for a damages hearing.
 {¶ 11} In lieu of a hearing on damages, the parties stipulated that plaintiff's damages arising from the wrongful death of her mother, Ms. Thompson, were sufficient to exhaust the $50,000 in additional UM/UIM coverage that the trial court found to be available in its decision. Consequently, on April 28, 2006, the trial court rendered judgment in favor of plaintiff and against defendant in the amount of $50,000.
 {¶ 12} Defendant appeals from that judgment and sets forth the following five assignments of error for our review:
 I. THE TRIAL COURT ERRED IN RULING THAT PLAINTIFF-APPELLEE JULEE CAMP IS ENTITLED TO UM COVERAGE UNDER THE STATE FARM AUTO POLICY. MS. CAMP IS NOT ENTITLED TO UM COVERAGE FROM STATE FARM BECAUSE SHE FAILED TO FILE SUIT AGAINST STATE FARM WITHIN TWO YEARS AFTER THE ACCIDENT.
 II. THE TRIAL COURT ERRED IN RULING THAT JULEE CAMP IS ENTITLED TO UM COVERAGE BECAUSE SHE FAILED TO FILE SUIT AGAINST THE TORTFEASOR WITHIN THE TWO-YEAR STATUTE OF LIMITATIONS FOR WRONGFUL DEATH. AS SUCH, SHE IS NOT "LEGALLY ENTITLED TO COLLECT," AS IS REQUIRED BY THE POLICY.
 III. THE TRIAL COURT ERRED IN RULING THAT JULEE CAMP WAS ENTITLED TO UM COVERAGE UNDER THE STATE FARM POLICY. BY FAILING TO SUE THE TORTFEASOR, THE PLAINTIFF FAILED TO PRESERVE STATE FARM'S CONTRACTUAL AND STATUTORY SUBROGATION RIGHTS, WHICH IS A PRECONDITION TO COVERAGE UNDER THE POLICY.
 IV. THE TRIAL COURT ERRED IN RULING THAT JULEE CAMP IS ENTITLED TO UM COVERAGE UNDER THE STATE FARM POLICY BECAUSE STATE FARM IS ENTITLED TO SET OFF THE $50,000 ALREADY PAID TO HER BY PROGRESSIVE FROM THE WRITTEN $50,000 UM COVERAGE LIMIT OF THE STATE FARM POLICY.
 V. THE TRIAL COURT ERRED IN RULING THAT MS. CAMP IS ENTITLED TO UM COVERAGE UNDER THE STATE FARM POLICY BECAUSE SHE HAS ALREADY RECOVERED UNDER THE PROGRESSIVE POLICY FOR THE WRONGFUL DEATH OF HER MOTHER. THE ANTI-STACKING CLAUSES OF THE STATE FARM POLICY PRECLUDE HER FROM RECOVERING ADDITIONAL BENEFITS UNDER HER HUSBAND'S POLICY.
 {¶ 13} Finding that it disposes of this appeal, we resolve this matter by addressing defendant's fourth assignment of error. Under its fourth assignment of error, defendant argues that the trial court erred in finding that plaintiff is entitled to UM coverage[1] under the State Farm policy because, pursuant to the policy and R.C. 3937.18(A)(2), defendant is entitled to set off the $50,000 that has been paid to plaintiff by Progressive against the $50,000 UM/UIM coverage limit of the State Farm policy. Specifically, defendant asserts that plaintiff already has recovered $50,000 for damages arising from Ms. Thompson's death. Therefore, according to defendant, it is entitled to reduce the $50,000 limit of UM/UIM coverage under its policy by the $50,000 already recovered by plaintiff. Regarding defendant's fourth assignment of error, plaintiff argues that defendant "continues to ignore the rationale and result" of Wallace v. Balint (2002), 94 Ohio St.3d 182. (See plaintiff's brief, at 16.) Plaintiff asserts that, based on the analysis of stacking in Wallace, defendant is not entitled to set off the amount of the proceeds recovered from the tortfeasor's insurance carrier against the UM/UIM coverage limit of the State Farm policy.
 {¶ 14} Plaintiff's reliance on Wallace, as support for her argument that defendant's fourth assignment of error should be overruled, is misplaced. The Wallace case involved the issue of whether the appellants were attempting to impermissibly stack insurance coverages under multiple policies, but it did not involve the issue of whether the insurer was entitled to set off amounts available to the appellants against UM/UIM coverage limits in the insurance policies, pursuant to the Ohio Revised Code and applicable language in those policies.
 {¶ 15} In analyzing the stacking issue, the lead opinion inWallace noted that "stacking" is defined in former R.C. 3937.18(G), and it quoted former R.C. 3937.18(G)(2), which defined "intrafamily stacking" as "the aggregating of the limits of such coverages purchased by the same person or two or more family members of the same household." Additionally, the lead opinion observed that "stacking" has been defined as "the ability of insured, when covered by more than one insurance policy, to obtain benefits from second policy on same claim when recovery from first policy alone would be inadequate." (Emphasis sic.) Id. at 185, quoting Black's Law Dictionary (6 Ed.1990) 1403. Furthermore, the opinion also observed that "[t]he concept of `stacking' coverages * * * arises where the same claimant and the same loss are covered under multiple policies, or under multiple coverages contained in a single policy, and the amount available under one policy is inadequate to satisfy the damages alleged or awarded." (Emphasis sic.)Wallace, at 185, quoting 12 Couch, Insurance (3 Ed.1998) 169-14 to 169-15, Section 169:4.
 {¶ 16} The State Farm policy at issue in this case contains language precluding stacking. Specifically, the State Farm policy states that "[a]ny and all stacking of uninsured motor vehicle coverage is precluded." R.C. 3937.18(G), as amended by Am. Sub. S.B. No. 20,[2]
permitted "insurers to preclude the stacking of UM/UIM policy limits, regardless of whether such stacking attempts are `intrafamily' or `interfamily,' and regardless of whether there is any evidence of a discount in the premium charged." Bebout v. Tindall, Franklin App. No. 03AP-1031, 2004-Ohio-3936, at ¶ 15, citing Wallace.
 {¶ 17} Even if plaintiff was not attempting to impermissibly "stack" insurance policies, as that term was defined in Wallace, that would not resolve the issue of whether defendant is entitled to set off the amount plaintiff received from Progressive against the UM/UIM coverage limit of the State Farm policy, pursuant to the State Farm policy and former R.C.3937.18(A)(2). Therefore, the Wallace case is not dispositive as to the setoff issue raised by defendant's fourth assignment of error.
 {¶ 18} In its "UNINSURED MOTOR VEHICLE" section, the State Farm policy provides, in part, as follows:
 Subject to the above, the most we pay for all damages arising out of and due to bodily injury to one person is the lesser of:
 1. the difference between the "each person" limits of liability of this coverage, and the amount paid for that bodily injury by or for any person or organization who is or may be held legally liable for the bodily injury[.]
 {¶ 19} As pertinent to this appeal, former R.C. 3937.18(A)(2) provided, in part, as follows:
 * * * The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
 {¶ 20} The Supreme Court of Ohio has held that "[f]or the purpose of setoff, the `amounts available for payment' language in R.C.3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)." Clark v. Scarpelli (2001), 91 Ohio St.3d 271, syllabus. Therefore, the Supreme Court of Ohio has construed "the `amounts available for payment' language in R.C. 3937.18(A)(2), as amended by S.B. 20, as requiring a comparison between the amounts that are actually accessible to the injured claimant from the tortfeasor's automobile liability insurance carrier and the injured claimant's own underinsured motorist coverage limits." Id. at 276.
 {¶ 21} Here, plaintiff already has recovered $50,000 from Progressive, the tortfeasor's automobile liability insurance carrier. She received that money as the beneficiary of Ms. Thompson, an insured under the tortfeasor's policy. Even though the spousal exclusion in the Progressive policy precluded Ms. Thompson's estate from presenting a liability claim, her estate received $100,000 from Progressive under the UM/UIM coverage in the policy, $50,000 of which was distributed to plaintiff. Pursuant to the setoff provision in the State Farm policy, the $50,000 UM/UIM coverage limit of the State Farm policy is reduced by the $50,000 plaintiff received from Progressive. Consequently, we conclude that plaintiff is not entitled to recover UM/UIM benefits under the State Farm policy. Therefore, we sustain defendant's fourth assignment of error.
 {¶ 22} Based on the foregoing, we sustain defendant's fourth assignment of error. Having sustained defendant's fourth assignment of error, defendant's first, second, third, and fifth assignments of error are rendered moot. Accordingly, we reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
McGRATH and TRAVIS, JJ., concur.
[1] The uninsured motor vehicle section of the State Farm policy defines an "uninsured motor vehicle" to include uninsured and underinsured motor vehicles.
[2] The statutory law in effect on the date the policy was issued is the law to be applied. Benedict v. State Auto. Mut. Ins. Co., Franklin App. No. 03AP-879, 2004-Ohio-2497, at ¶ 6, citing Ross v. Farmer Ins.Group of Cos. (1998), 82 Ohio St.3d 281, 287.